[S. F. No. 11318. In Bank.—July 2, 1925.]

In the Matter of the Estate of FANNIE M. IRWIN, Deceased. HELENE IRWIN CROCKER et al., Petitioners, Appellants and Respondents, v. RAY L. RILEY, as Controller, etc., Respondent and Appellant.

[1] INHERITANCE TAX — ENDOWMENT FUND CREATED BY WILL — CHARACTER OF ORGANIZATION—EXEMPTIONS—CONSTRUCTION.—Under a will which appoints and gives to named individuals, as trustees of an endowment fund, "their survivor or survivors, and successors, in perpetuity," a specified sum, who are empowered to invest and reinvest the funds, to pay out the income for charitable purposes, and to employ agents, secretaries, and attorneys and to fix and pay their salaries and compensation; and who are required to keep true records of all their transactions and authorized "to make by-laws for the government and administration of the trust, and for the appointment of their successors in office," the will further specifying that the by-laws are to provide for the meetings of those whom the testatrix has designated to govern the fund, for the notice upon which the meetings shall be called and for the number of trustees not less than a majority which shall constitute a quorum, a permanent "association" is contemplated and authorized which falls within the category of legatees eligible for exemption from taxation under the terms of the proviso to section 6, subdivision 1, of the

Inheritance Tax Act of 1917, which grants exemption to societies, or associations, organized or existing under the laws of this state.

[2] ID.—CORPORATIONS—ASSOCIATIONS—EXEMPTIONS.—It is not necessary that the body governing such fund should be a corporation rather than an unincorporated association in order to be entitled to the benefit of the exemption.

[3] ID.—USUAL MEANING OF TERM "ASSOCIATION."—The usual meaning of the term "association" is an unincorporated organization composed of a body of men partaking in a general form and mode of procedure of the characteristics of a corporation.

[4] ID.—CHARITY—CORPORATIONS—ASSOCIATIONS.—It is not the rule in this state that the legatee of a bequest for the benefit of charity shall be a corporation. An unincorporated association is competent to take.

[5] ID.—EXEMPTION—PLACE OF ORGANIZATION OR EXISTENCE.—The requirement of the Inheritance Tax Act that, in order that property transferred to an association for charitable uses may be exempt from inheritance tax, such association be one organized or existing under the laws of this state, is met by the organization provided for in such will, although its formal functioning was consummated subsequent to the time of the death of the decedent.

[6] ID.—CAPACITY OF TRUSTEES—ASSOCIATIONS—TIME OF VESTING OF FUND.—The persons named in the will creating the endowment fund do not take the charitable bequest in their personal capacity, or, in other words, as "persons," but do so in the capacity of an association under the name designated by the will, the complete organization of which is provided for in said will and which only awaited the death of the testatrix to become *eo instante* vested with the *corpus* of the trust.

[7] ID.—CHARITABLE FOUNDATIONS — STATUTORY CONSTRUCTION. — The law should be liberally construed so as to favor and encourage such charitable foundations and should not be construed so as to lay the heavy burden of inheritance taxes upon the property devoted to such uses and thus, to the extent of such burden, hamper and limit the resources of the trust intended for such beneficial uses.

[8] ID.—LEGACY—CONSTRUCTION—COMPUTATION OF TAX.—Where a will bequeathed a legacy of a specified amount and provided that such legacy should be free and clear of all inheritance tax, which was directed to be paid from the residue of the estate, the legatee, by reason of the fact that the payment of the tax was to be made out of the residue of the estate, was bequeathed an additional amount sufficient to pay the tax and the tax upon the tax *ad infinitum;* and it was necessary that the tax upon the distributive interest passed to the residuary legatee be computed not upon the residue before the payment of the inheritance tax upon the bequest but upon the residue after the payment of the tax.

[9] ID.—INTEREST ON TAX—PENALTY—STATUTORY CONSTRUCTION.—The litigation referred to in subdivision 2 of section 7 of the Inheritance Tax Act to the effect that a penalty of ten per cent per annum shall not be charged upon any tax where, by reason of necessary litigation, the estate cannot be settled at the end of eighteen months from the death of the decedent, "but that litigation to defeat the payment of the tax shall not be considered necessary litigation," means litigation instigated without justification and upon grounds which are not meritorious.

[10] ID.—INTENT—LEGISLATURE.—The result undoubtedly intended to be accomplished by the enactment of the proviso in subdivision 2 of section 7 of the Inheritance Tax Act that "litigation to defeat the payment of the tax shall not be considered necessary litigation" was the prevention of unjustified delay in the payment of taxes rightfully due the state by reason of unnecessary litigation. This result would be accomplished by limiting the imposition of a penalty for resort to the courts to litigation which was unjustified, leaving it for the court to decide in each instance whether or not the litigation was justified.

[11] ID.—OPPOSITION TO PAYMENT OF TAX—MERIT OF GROUNDS OF—PENALTY.—On this appeal involving the validity of the imposition of state inheritance taxes, the grounds of opposition to the payment of the taxes presented by counsel for the estate possessed sufficient merit to warrant their presentation to a court for a determination of the questions involved; and the order of the trial court fixing interest upon the tax at seven per cent, commencing eighteen months after the death of the decedent without the imposition of a penalty, was, therefore, correct.

---

(1) 37 Cyc., p. 1573, n. 5.     (2) 37 Cyc., p. 1573, n. 5.     (3) 5 C. J., p. 1334, n. 11.     (4) 11 C. J., p. 338, n. 30, 30 New.     (5) 37 Cyc., p. 1573, n. 5.     (6) 11 C. J., p. 338, n. 30 New.     (7) 37 Cyc., p. 1556, n. 76.     (8) 37 Cyc., p. 1577, n. 42.     (9) 37 Cyc., p. 1586, n. 19.     (10) 37 Cyc., p. 1586, n. 19.     (11) 37 Cyc., p. 1586, n. 19.

APPEALS from orders of the Superior Court of the City and County of San Francisco imposing inheritance taxes and fixing rate of interest on tax due on certain bequest. Frank H. Dunne, Judge. Reversed in part; affirmed in part.

The facts are stated in the opinion of the court.

P. F. Dunne and J. F. Shuman for Appellants.

Dion R. Holm, A. W. Brouillet and Ralph W. Smith for Respondent.

LENNON, J.—These are appeals from an order fixing the inheritance tax upon the transfer by will of certain property of Fannie M. Irwin, deceased. We shall first discuss the questions involved in the appeal of those who, interested in the estate, are contesting the validity of the tax imposed by such order. That appeal involves two distinct questions: (1) the validity of the imposition of a state inheritance tax of $453,854.45 upon the property bequeathed to the William G. Irwin Charity Foundation, and (2) the validity of the imposition of a tax of $7,602.27 upon a legacy of $100,000 to Charles Templeton Crocker rather than an imposition of a tax of $6,690 on said legacy.

The order fixing the inheritance tax shows that Mrs. Irwin died December 6, 1919; that she was at the time of her death a resident of the city and county of San Francisco, and that her will was dated and executed May 6, 1919, and was admitted to probate by the superior court December 29, 1919.

Paragraph 19 of the will, which deals with the establishment of The William G. Irwin Charity Foundation, reads as follows:

"19. I hereby declare it is my intention and purpose to establish, and I do hereby make permanent establishment, of a Trust Fund, to be known as 'The William G. Irwin Charity Foundation.'

"I do hereby appoint, and give, devise and bequeath to Helene Irwin Crocker, Charles Templeton Crocker, Edward I. Spalding, John D. McKee, and William I. Brobeck, as Trustees of 'The William G. Irwin Charity Foundation,' their survivor or survivors, and successors, in perpetuity, the sum of one million dollars ($1,000,000) in United States Gold Coin, or such number of shares of stock of the William G. Irwin Estate Company, as shall equal, at a fair valuation, said sum, at the election of said Trustees, to be by them held as such Trustees, and administered to the uses and purposes, and with the powers and authorities herein declared, that is to say,

"(a) To be by them, or the survivor or survivors of them, or their successors, held and administered, as a perpetual charitable fund in trust, to hold, manage and administer the same, and to invest and reinvest the funds thereof in such properties as, in their judgment, or in the

196 Cal.—24

judgment of the survivor or survivors of them, or their successors, shall yield the greatest net income consistent with conservative and safe administration thereof, and to pay out the net income thereof to such charitable uses, including medical researches and other scientific uses, designed to promote or improve the physical condition of mankind, as in their judgment may be deemed worthy of support, and to expend, in aid thereof, such amounts, at such times and on such conditions, as to them, or the survivor or survivors of them, or their successors, shall seem proper, provided, always, that the said net income from said Foundation shall be expended in aid only of such charitable uses as do or may exist in the Hawaiian Islands or the State of California. * * * * * * * * * *

"(b) The said trustees shall have power to sell, convey, partition, divide, mortgage, hypothecate, pledge, lease, let, hold, invest and reinvest, in their discretion, the whole or any part of said trust estate, with the same force and effect as if they were the absolute owners thereof, and they, or the survivor or survivors of them, or their successors, shall receive and be paid the sum of five hundred dollars ($500) each, per annum, in full compensation for all services rendered by them or any of them, in the administration of said trust. Such nominal sum is so named by me to cover the personal expenses which might be incurred by them in the administration of such trust, and not as an expression of my appreciation for, or of, the value of the charitable services which they will render.

"(c) Said Trustees shall keep true records of all their transactions. They shall have further power to employ agents, secretaries and attorneys, and to fix and pay their salaries or compensation, and to make by-laws for the government and administration of the trust, and for the appointment of their successors in office; provided that such by-laws shall only be adopted or amended by and with the unanimous consent in writing of all of the trustees.

"Said by-laws may provide for meetings of the Trustees, and prescribe the notice upon which meetings shall be called, and for the number of Trustees, not less than a majority, who shall constitute a quorum for the transaction of their business, and they may also provide that any acts of the Trustees which shall be approved in writing by any number

of the trustees less than all, but not less than a majority, shall be as effectual as if done by all.''

The will leaves three-quarters of the residue of the estate of the testatrix to her daughter, Helene Irwin Crocker, absolutely. The remaining quarter of the residue, by the terms of the will, goes into an income trust for the benefit of the daughter during her life. Upon the death of the daughter the trust residue is to vest in her children, or issue of the children. If there be no children or issue to take the residuary one-quarter, the same ''shall vest and shall be transferred, delivered and paid over to the trustees of said 'The William G. Irwin Charity Foundation,' to be by them held as part of the *corpus* of said trust and administered accordingly.''

The order fixing the inheritance tax adjudged The William G. Irwin Charity Foundation liable for an inheritance tax in the sum of $453,854.45 and assessed and fixed the tax at that sum.

Section 6, subdivision 1, of the Inheritance Tax Act of 1917 governs and controls the liability of The William G. Irwin Charity Foundation for the payment of a state inheritance tax.

Section 6, subdivision 1, of said act reads as follows:

''The following exemptions from the tax are hereby allowed:

'' (1) All property transferred to societies, corporations, and institutions now or hereafter exempted by law from taxation, or to any public corporation, or to any society, corporation, institution, or association of persons engaged in or devoted to any charitable, benevolent, educational, public, or other like work (pecuniary profit not being its object or purpose), or to any person, society, corporation, institution, or association of persons in trust for or to be devoted to any charitable, benevolent, educational, or public purpose, by reason whereof any such person or corporation shall become beneficially entitled, in possession or expectancy, to any such property or to the income thereof shall be exempt; *provided, however,* that such society, corporation, institution or association be organized or existing under the laws of this state or that the property transferred be limited for use within this state.'' (Stats. 1917, c. 589, pp. 880–902.)

[1] We are satisfied that The William G. Irwin Charity Foundation falls within the category of legatees eligible for exemption from taxation under the terms of the proviso to section 6, subdivision 1, of the Inheritance Tax Act of 1917, just quoted, which grants exemption to societies, or associations, organized or existing under the laws of this state. [2] It is not necessary, in our opinion, that The William G. Irwin Charity Foundation should be a corporation rather than an unincorporated association in order to be entitled to the benefit of the exemption.

The proviso does not require that it should be a corporation. On the contrary, it expressly provides that it may be a society, institution, or *association*. The William G. Irwin Charity Foundation aptly answers to the description of an "association." [3] The usual meaning of the term "association" is an "unincorporated organization composed of a body of men partaking in general form and mode of procedure of the characteristics of a corporation." (*Knight* v. *Stevens,* 66 App. Div. 267 [72 N. Y. Supp. 815].) [4] It is not the rule in this state that the legatee of a bequest for the benefit of charity shall be a corporation. An unincorporated association is competent to take. (Civ. Code, sec. 1313; *Estate of Winchester,* 133 Cal. 271 [54 L. R. A. 281, 65 Pac. 475] ; see, also, *Estate of Merchant,* 143 Cal. 537 [77 Pac. 475] ; *Estate of Uphams,* 127 Cal. 90 [59 Pac. 315] ; *Kaufmann* v. *Foster,* 3 Cal. App. 741 [86 Pac. 1108].) This being so, clearly it cannot be fairly said that the legislature intended by the use of the terms "society, corporation, institution or association" to mean only corporations. There can be no escape from the conclusion, it seems to us, that the proviso clearly makes a differentiation between a corporation and an unincorporated association and grants exemption to both.

There can be no question but that the organization of the trustees into a permanent association was contemplated by the testatrix and authorized by the terms of her will. By the will five associates of the testatrix's choice are named as trustees of The William G. Irwin Charity Foundation and the management of the endowment fund of $1,000,000 is entrusted to these associates, a definite, concrete body, and "their survivor or survivors, and successors, in perpetuity." They are clothed with functions and vested with powers similar to those of a corporation. They were empowered

to invest and reinvest the funds, and to pay out the income
for the laudable purposes which the testatrix had in view.
They were empowered to employ agents, secretaries, and at-
torneys and to fix and pay their salaries and compensation.
They were required to keep true records of all their trans-
actions and authorized "to make by-laws for the government
and administration of the trust, and for the appointment of
their successors in office." The will even goes so far as
to specify that the by-laws are to provide for the meetings
of those whom the testatrix has designated to govern The
William G. Irwin Charity Foundation, for the notice upon
which the meetings shall be called and for the number of
trustees not less than a majority which shall constitute a
quorum. [5] Tracing its origin and existence to the will
of the testatrix, it may be fairly said, we think, that The
William G. Irwin Charity Foundation answers the require-
ment of the proviso that it be an association organized or ex-
isting under the laws of this state although its formal func-
tioning was consummated subsequent to the time of the
death of the decedent.

[6] The persons named in the will of Mrs. Irwin do not
take the charitable bequest in their personal capacity, or,
in other words, as "persons," but do so in the capacity of
an association under the name of "The William G. Irwin
Charity Foundation," the complete organization of which
is provided for in said will and which only awaited the
death of Mrs. Irwin to become *eo instante* vested with the
*corpus* of the trust. (*Estate of Graves*, 171 N. Y. 40 [63
N. E. 787].)

[7] The law should be liberally construed so as to favor
and encourage such charitable foundations and should not
be construed so as to lay the heavy burden of inheritance
taxes upon the property devoted to such uses and thus, to
the extent of such burden, hamper and limit the resources
of the trust intended for such beneficial uses. (Blakemore
and Bancroft on Inheritance Taxes, sec. 241, p. 196.)

It would be a narrow interpretation of the statute to
hold that a testatrix desiring to devote a lawful portion of
her property to benevolent, charitable, educational, or public
purposes could only do this, so as to relieve the income of
such property from the inheritance tax, by causing her trus-
tees to formally function as a corporation or association

under the laws of this state prior to her death and prior to the time when her will became effective and prior to the date when the trust could come into being. (*In re Graves, supra; Matter of Le Fevre,* 233 N. Y. 138 [135 N. E. 203].)

The question here presented is similar to that propounded in the case of *In re Curtis' Estate,* 88 Vt. 445 [92 Atl. 965]. That case involved a statute strikingly similar to the one under discussion here. The statute there provided that, "Every person, other than the father, mother, . . . and every charitable, educational, or religious society or institution, other than one created and existing under and by virtue of the laws of this state, and having its principal office herein, that shall receive in trust or otherwise, a legacy or distributive share consisting of or arising from property or an interest therein, passing by will, the law of descent, or the decree of a court in this state . . . shall . . . pay to the state a tax of five per cent of the value in money of such legacy or distributive share." The question presented therein was whether or not a board of trustees was a "charitable, educational or religious society or institution, created and existing by virtue of the law of this state and having its principal office herein." The claim was made there as here that the society was not in existence at the time of the death of the testator and that, therefore, the legacies were not exempt. The court there said that it was only necessary to consider whether the trustees were a society authorized under the terms of the will and held that the board of trustees was entitled to the benefit of the exemption.

The case of *Pierce v. Stevens,* 205 Mass. 219 [91 N. E. 319], is cited by respondent to the point that organization of an association prior to the death of the decedent is essential to an avoidance of the tax. That case is not precisely in point here and is in a material measure distinguishable from the case at bar. No provision was made in the will of the testator nor was there even a suggestion therein that the trustees to whom the bequest was made should be an association for the execution of the trust and it was held in effect that the formation of a corporation by the trustees on their own motion subsequent to the death of the testator for the execution of the trust would not suffice to relieve the bequest from the burden of taxation. Assuming, however, that the case last referred to may be construed as holding as

the respondent contends, nevertheless we are satisfied that the better rule is enunciated in the case of *In re Curtis' Estate, supra,* which is founded, as previously indicated, upon a statute substantially the same as the statute of this state covering and controlling the same subject matter.

It follows from what we have said that the order fixing the inheritance tax, in so far as it imposes a tax upon the bequest to The William G. Irwin Charity Foundation, is erroneous.

[8] The controversy as to the tax upon a legacy to Charles Templeton Crocker involves the correctness of the manner and method of the computation of the tax. Upon this phase of the case it is insisted that the tax should amount only to $6,690 rather than $7,602.27 as fixed by the decree of the court below. The legacy is given by paragraph 5 of the will, which reads as follows:

"5. I give and bequeath to my son-in-law, Charles Templeton Crocker, the sum of one hundred thousand dollars ($100,000) in United States Gold Coin, free and clear of all inheritance taxes, which I direct to be paid from the residue of my estate. This bequest is made as a slight expression of my esteem and affection for him."

In the absence of such a provision as that contained in paragraph 5 of the will that the bequest of $100,000 shall be free and clear of all inheritance taxes and directing the payment of the taxes out of the residue of the estate, it is apparent that the bequest of $100,000 would itself be liable for the payment of the inheritance tax thereon. The actual value of the property, therefore, transferred to Charles Templeton Crocker by paragraph 5 of the will was not the sum of $100,000 but the sum of $100,000 plus an amount sufficient to permit him to take the $100,000 free from all liability for the inheritance tax, or a total of $107,602.27. That is to say, the amount bequeathed to him by the will was such an amount as would net $100,000 after the payment of the inheritance tax thereon. In short, by making the payment of the tax payable out of the residue of the estate, the legatee was bequeathed an additional amount sufficient to pay the tax and the tax upon the tax *ad infinitum.*

The amount which the residuary legatee actually received was the residuum after the payment of the inheritance tax

upon the bequest of $100,000. It is necessary that the tax upon the distributive interest passed to the residuary legatee be computed not upon the residue before the payment of the inheritance tax upon the bequest but upon the residue after the payment of the tax. (*Estate of Kenney,* 157 Cal. 517, 526 [29 L. R. A. (N. S.) 428, 108 Pac. 280].) It is at once apparent that upon appellants' theory that the tax is to be computed only upon the bequest as specified in actual figures in the will and upon the residuum after the deduction of the payment of the tax upon the bequest of $100,000, that no tax would be computed upon the money left by the testatrix to be applied to the payment of the inheritance tax upon the various bequests. By this means a testator by a direction to pay all inheritance taxes out of the residue could defeat the payment to the state of the tax on a very substantial part of his estate.

The manner and method of computing the tax upon this particular legacy was, we think, correct.

[9] The appeal by Ray L. Riley, as comptroller, is based upon the ground that the interest rate pursuant to the Inheritance Tax Act of 1917 should have been fixed by the court at ten per cent per annum from the date of decedent's death and not at seven per cent per annum from the sixth day of June, 1921, said date being eighteen months following the date of the death of the decedent. There is contained in the record a stipulation signed by respective counsel to the effect that "no cause or reason for the fixing of interest at seven per cent per annum was shown other than the desire to appeal, of Helene Irwin Crocker, et al." It is appellant's contention that under these circumstances the provisions of section 7, subdivision 2, of the Inheritance Tax Act of 1917 require the imposition of interest at the rate of ten per cent. Said section and subdivision read as follows:

"(1) All taxes imposed by this act, unless otherwise herein provided for, shall be due and payable at the death of the decedent, and if the same are paid within eighteen months no interest shall be charged and collected thereon, but if not so paid, interest at the rate of ten per centum per annum shall be charged and collected from the time said tax accrued. . . . (2) The penalty of ten per cent per annum imposed

by subdivision (1) of this section for the nonpayment of said tax, shall not be charged in cases where, in the judgment of the court, by reason of claims made upon the estate necessary litigation, or other unavoidable cause of delay, the estate of any decedent, or any part thereof, cannot be settled at the end of eighteen months from the death of the decedent; but in such cases seven per cent per annum shall be charged upon the said tax from the expiration of said eighteen months until the cause of such delay is removed, after which ten per cent interest per annum shall again be charged until the tax is paid; but litigation to defeat the payment of the tax shall not be considered necessary litigation.''

It is insisted by Ray L. Riley, as appellant, that under the proviso last quoted of subdivision 2 of section 7, the litigation instituted by contestants to determine if any tax was due from The William G. Irwin Charity Foundation and the correctness of the amount of tax fixed upon the legacy to Charles Templeton Crocker cannot be considered necessary litigation and that the penalty of ten per cent interest for the deferred payment of the taxes should have been imposed. In short, appellant insists that the proviso deals with any and all litigation in which the validity of the tax is involved.

Contestants insist that the litigation therein specified must be construed to mean litigation instigated without justification and upon grounds which are not meritorious. The construction insisted upon by contestants seems to us to be the proper one. If the proviso be construed to mean ''any or all litigation'' it would necessarily follow that even a litigant who had successfully proved in court his contentions as to the invalidity of a tax imposed would be liable for the imposition of the interest of ten per cent as a penalty for submitting his objections to a court for adjudication, for even successful litigation would be ''litigation to defeat the payment of a tax.'' Such a result would obviously be an absurdity. As was said in *San Joaquin etc. Irr. Co.* v. *Stevinson,* 164 Cal. 221, 229 [128 Pac. 924, 927]: ''Where a statute is fairly susceptible of two constructions, one leading inevitably to mischief or absurdity, and the other consisting of sound sense and wise policy, the former should be rejected and the latter adopted. A construction should

not be given to a statute, if it can be avoided, which will lead to absurd results, or to a conclusion plainly not contemplated by the Legislature.''

The state is, of course, interested only in securing the payment of taxes rightfully due, and it cannot have been the intention of the legislature to coerce, by the threat of a heavy penalty for a resort to the courts, the payment of taxes to which the state may not be rightfully entitled. [10] The result undoubtedly intended to be accomplished by the enactment of the proviso was the prevention of unjustified delay in the payment of taxes rightfully due the state by reason of unnecessary litigation. This result would be accomplished by limiting the imposition of a penalty for resort to the courts to litigation which was unjustified, leaving it for the court to decide in each instance whether or not the litigation was justified. If the litigant be successful the court necessarily would hold that the litigation was not unnecessary and unjustified. If the litigant be unsuccessful the court could determine in each case whether the grounds of opposition were or were not meritorious. Such a construction of the proviso is much more fair and just to both sides of a controversy involving a tax than the strict and harsh construction insisted upon by the appellant.

In view of the construction of the provision which we deem to be the correct one, the question of its constitutionality, if another construction be given, need not be discussed and decided.

[11] The grounds of opposition presented by counsel for the estate possessed sufficient merit in our opinion to warrant their presentation to a court for a determination of the questions involved. Inasmuch as no penalty was imposed, this doubtless was also the opinion of the court below. The fixing of the interest rate at seven per cent, commencing eighteen months after the death of the decedent without the imposition of a penalty, was, therefore, correct.

The order in so far as it relates to the fixing of the inheritance tax upon the bequest made to The William G. Irwin Charity Foundation is reversed.

That portion of the order fixing the tax upon the bequest to Charles Templeton Crocker is affirmed.

Likewise the order fixing the rate of interest upon the tax due upon the bequest to Charles Templeton Crocker is affirmed.

Richards, J., Seawell, J., Waste, J., Lawlor, J., and Shenk, J., concurred.

MYERS, C. J., Dissenting.—I dissent from so much of the decision herein as relates to the fixing of the inheritance tax upon the bequest made to The William G. Irwin Foundation. The question involved relates solely to the construction to be given to the language of our own statute. So far as the decisions of other courts which have a bearing upon this question are concerned, I find no substantial preponderance of authority either way.

It seems to me plainly apparent that the alternative conditions expressed in the proviso to subdivision 1 of section 6 were intended to be taken distributively, *reddendo singular singulis*. (*Sargent* v. *Shumaker,* 193 Cal. 122, 127 [223 Pac. 972].) The first of such conditions relates to transfers to any society, etc., engaged in or devoted to charitable work. The second relates to transfers in trust for any charitable purpose. This subdivision should, therefore, be read as if it provided at length as follows (eliminating the portions which are foreign to the question here under consideration) : "All property transferred . . . to any society, corporation, institution, or association of persons, engaged in or devoted to any charitable . . . work . . . shall be exempt; *provided, however,* that such society, corporation, institution or association be organized or existing under the laws of this state.

"All property transferred . . . to any person, society, corporation, institution, or association of persons, in trust for or to be devoted to any charitable . . . purpose . . . shall be exempt; *provided, however,* that the property transferred be limited for use within this state."

The situation which confronted the testatrix, therefore, was that in order to secure the statutory exemption for her proposed bequest she was required to adopt one of two alternatives, either (1) to bequeath the fund to a society, corporation, institution, or association actually engaged in or devoted to a charitable work and which was existing under

the laws of this state, or (2) to bequeath the fund in trust for a charitable purpose limited for use within this state. As the bequest herein does not conform to either of these alternatives, I am of the opinion that it is not entitled to the claimed exemption.

I concur with the majority opinion as to the other two points decided herein.