

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 9, 1949

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-958.

Re: Exemption of certain testa-
mentary trusts from inher-
itance taxes.

Dear Sir:

You have requested the opinion of this office "with re-
spect to the taxability of a bequest under Paragraph IX (b) of the
last will and testament of Frank Hays McFarland, who died a res-
ident of Tarrant County on May 7, 1948."

From the file attached to your request we are given the
following facts. On July 2, 1947, Frank Hays McFarland and his
wife, Carrie E. McFarland, executed a joint, mutual and contrac-
tual will which has been duly probated as the Last Will and Testa-
ment of Frank Hays McFarland. Carrie E. McFarland has duly
qualified as Independent Executrix, and at the time the instrument
was admitted to probate reaffirmed the agreement contained in the
will to accept under it and in all things to abide by its terms and to
continue it in full force and effect as her Last Will.

The will is a nineteen-page instrument which provides
in substance that at the death of either party all property of both,
with certain stated exceptions, is to go to the survivor as trustee
in trust for life, the trustee to have full powers of management and
disposal and the right to use the income from all property for life;
and at the death of the survivor, the remainder of such property
and all other property of every kind or character owned by the sur-
vivor or in which the survivor had any interest, with certain stated
exceptions, are to pass to and vest in the Fort Worth National Bank
of Fort Worth as trustee for the uses and purposes stated in the
will. The bank as trustee is given stated powers of management of
the corpus of the trust which is to be at all times maintained intact.
The net income from the trust is to go to the Rector, Wardens and
Vestry of St. Andrew's Episcopal Church of Fort Worth "as that
body shall be constituted at the various times the actions . . . pro-
vided for are to be taken," said body to have full power and author-
ity to dispose of the net income of the trust in accordance with the
provisions of the will.

Paragraph IX of the will reads, in part, as follows:

"(a) Forty-five per centum (45%) of the net income from this trust shall go into, and constitute the 'McFarland Day Nursery Fund' to be used for the care of underprivileged children residing in Tarrant or Parker Counties, Texas. Said Fund shall be handled and expended by, or under the direction of, the Rector, Wardens and Vestry of St. Andrew's Episcopal Church of Fort Worth, Texas; and, to the greatest extent by them from time to time considered feasible, shall be used and expended by contributing to the support, maintenance, development and improvement of an institution, or institutions, such as The Day Nursery Association of Fort Worth, Texas. But we desire and direct that, to the extent said Rector, Wardens and Vestry of St. Andrew's Episcopal Church of Fort Worth, Texas, from time to time may consider practicable, they exercise reasonable supervision over any institution to which contributions are made. If said Rector, Wardens and Vestry of St. Andrew's Episcopal Church of Fort Worth, Texas, consider it wise and judicious, they may, and are hereby granted full power and authority to, acquire by purchase, or otherwise, suitable property, or properties, and thereon operate a Day Nursery, or Day Nurseries, or a similar institution or institutions, for the care of underprivileged children living in Parker or Tarrant Counties, Texas.

"(b) Forty-five per centum (45%) of the net income from said trust shall be used to aid young men and young women who are residents of either Tarrant County or Parker County, Texas, to secure an education or vocational training. This aid shall be granted by long-term, low-interest loans to the young men and young women selected as hereafter provided. Such loans may be made to minors. The portion of the income from the trust created hereby which is to be used in this way, and all repayments of loans and interest thereon, shall constitute a fund to be known as the 'Eddleman-McFarland Fund.' This fund shall always be controlled and managed by the Rectors, Wardens and Vestry of St. Andrew's Episcopal Church of Fort Worth, Texas, as that body shall be constituted at the various times the actions hereafter provided for are to be taken. We wish and direct that at all times approximately fifty per centum (50%) of the sums available for loans be loaned to young men and young women residing in Parker County, Texas, and approximately fifty per centum (50%) to

young men and young women residing in Tarrant County, Texas. In selecting residents of Parker County, Texas, to receive such loans, we wish and direct that the Rector, Wardens and Vestry of St. Andrew's Episcopal Church of Fort Worth, Texas, consult with and, to the fullest extent consistent with the policy established by them, be governed by the recommendations of a committee composed of those who are, at the time, the County School Superintendent of Parker County, Texas, the District Judge of Parker County, Texas, and the Rector of All Saints Episcopal Church of Weatherford, Texas. We also wish and direct that all young men and young women securing loans from the Eddleman-McFarland Fund be required to attend an institution in Texas if the educational or vocational training sought can be obtained in a Texas institution, and that at all times said fund be administered on a wholly nonsectarian basis, without distinction or preference because of race, religion or sex."

Paragraph IX (c) allocates the remaining ten per cent of the net income to the Rector, Wardens and Vestry of the St. Andrew's Episcopal Church of Fort Worth to be used in defraying managerial and clerical expenses incurred in administering the two funds.

The trust is intended to be perpetual, and provisions are made for changing conditions and termination of the trust if "it shall be judicially determined by a District Court of Parker County, Texas, that it is not feasible or practicable to continue" it for either of the two purposes above set out. In this event all funds and property in the trust are to go outright to religious, educational and charitable institutions in Tarrant and Parker Counties, Texas.

We quote from your letter requesting our opinion:

" . . . this bequest /Paragraph IX (b)/ is not to a religious or charitable organization and the only question is whether or not it is for the use of an educational organization and is to be used within this State. The will is not specific that it must be used within this State, but it can be used outside the State in case the type of training desired is not available within this State.

"As we interpret paragraph IX (b) the bequest is simply a loan fund administered by a church. Theoretically, the fund is supposed to be self-perpetuating. All funds loaned are expected to be paid back by the individuals to whom they are loaned. The only way the educational feature comes into the picture, is that the money

is being loaned for the purpose of obtaining an educa-
tion. No educational organization has any right in the
fund itself.

"The argument is advanced by the attorney for
the estate that this is identical with bequests often made
to educational institutions, to be used by them as a loan
fund for needy students. This, of course, is not exact-
ly correct. In the latter type of cases, the bequest is
to the educational organization. In the instant case, the
educational organization has no claim whatever on this
trust fund.

"In view of the fact that we are uncertain as to
how this bequest should be treated, and also at the re-
quest of the attorney for the estate, the matter is being
referred to you for your attention and reply."

Article 7122, V.C.S., provides an exemption from inher-
itance taxes for "property passing to or for the use of the United
States or any religious, educational or charitable organization when
such bequest, devise or gift is to be used within this State."

We think that the funds established by Paragraph IX
stand on the same footing on one essential point. That is, we think
it necessary to first determine whether the establishment of this
trust can come within the statutory exemption which is allowed when
property passes "to or for the use of religious, etc., organizations."
If the property cannot be regarded as having passed to or for the
use of such an "organization", no part of the trust estate is entitled
to exemption.

There are no Texas cases in point, but numerous deci-
sions from other jurisdictions deal with the problem of whether
similar bequests are within variously worded exemptive provisions.
Where the statute provides for a deduction or exemption of prop-
erty passing to religious, educational or charitable institutions or
corporations It is generally held that the bequests or devises must
be made directly to such institutions or corporations. See In re
Price's Estate, 192 Wis. 580, 213 N.W. 477 (1927), and In re Arp's
Estate, 83 Ind. A. 371, 147 N.E. 297 (1925). Even under a statute
of this type, however, the highest court of Indiana allowed an exemp-
tion for property passing to a Trust Company where the will of the
decedent created administrative or governing boards through whom
the educational and charitable bequests were to be distributed.
Crittenberger v. State Savings & Trust Co., 189 Ind. 411, 127 N.E.
552 (1920). The court regarded the Trust Company as a mere agent
through whom business was to be transacted and held that the trus-
tee in conjunction with the boards named in the will constituted "a
governing body" of educational and charitable institutions within the
meaning of the statute.

Under our inheritance tax statute the exemption allowed for charitable, etc., bequests is not limited by a requirement that the property pass directly to a corporation or institution, but is allowed if the property passes to or for the use of a "religious, educational or charitable organization" when the "gift is to be used in this State." In this respect our statute is similar to the one discussed in In Re Lynch's Estate, 72 N.D. 48, 4 N.W.2d 591 (1942), wherein the court held that the mere delivery of property to a trustee did not prevent deduction of the legacies since the bequests and legacies were not for the use of the trustee but were for the use of certain charitable, educational and religious institutions.

The net income from the McFarland trust is to go to "the Rector, Wardens and Vestry of St. Andrew's Episcopal Church of Fort Worth" to be expended as provided in Paragraph IX of the will. If this group can be deemed a "charitable, religious or educational organization" within the meaning of the statute, the business management and control of the corpus of the trust by the Fort Worth National Bank will not result in a loss of exemption.

The Supreme Court of California in In Re Irwin's Estate, 196 Cal. 366, 237 Pac. 1074 (1925), held that a devise to named trustees was a devise to an "association of persons." The controlling portions of the applicable exemptive provision in the California Act read as follows:

> "(1) All property transferred to societies, corporations, and institutions now or hereafter exempted by law from taxation, or to any public corporation, or to any society, corporation, institution, or association of persons engaged in or devoted to any charitable, benevolent, educational, public or other like work . . . or to any person, society, corporation, institution, or association of persons in trust for or to be devoted to any charitable, benevolent, educational, or public purpose, by reason whereof any such person or corporation shall become beneficially entitled, in possession or expectancy, to any such property or to the income thereof, shall be exempt; provided, however, that such society, corporation, institution or association be organized or existing under the laws of this state or that the property transferred be limited for use within this state."

By the terms of decedent's will $1,000,000 was to go to certain named trustees, their survivors and successors in perpetuity, the sum so held and managed by them to be known as "the William G. Irwin Charity Foundation." The trustees were to use the net income for stated charitable purposes. The court first pointed out that the statute did not require that the charity be a corporation and held that the "Foundation" created by the will aptly answered the description of an "association." The usual meaning of the term "association", said the

court, is "an unincorporated organization, composed of a body of
men, partaking in its general form and mode of procedure of the
characteristics of a corporation . . . . There can be no question
but that the organization of the trustees into a permanent associa-
tion was contemplated by the testatrix and authorized by the terms
of her will." Under the will the trustees had full management of
the endowment fund and were therefore clothed with functions and
vested with powers similar to those of a corporation in that they
were impowered to invest and reinvest the funds and pay out the
income for the purposes which the testatrix had in view. They were
also required to keep records, etc., and were authorized to make
by-laws for the government and administration of the trust. Thus,
said the court, the complete organization provided for in the will
became at the death of the testatrix eo instante vested with the cor-
pus of the trust.

In In Re Curtis' Estate, 88 Vt. 445, 92 Atl. 965 (1915),
the court was concerned with whether a board of trustees consti-
tuted a "society". The decedent had devised and bequeathed to three
named trustees a remainder interest in all the rest and residue of
her estate to be used for purposes stated in the will. The trustees
had full power to manage and invest the corpus of the trust.

The parties named in the will were nominated and ap-
pointed as trustees, had duly qualified, and had organized by elect-
ing one of their number as president, another as vice-president,
and another as treasurer. They had also elected an assistant cash-
ier of the Merchant's National Bank as clerk of the Board of Trus-
tees. All trustees were officers of said bank and all business re-
lating to the trust was to be transacted by the bank.

The Vermont statute exempted from tax "every chari-
table, educational or religious society or institution . . . created or
existing under and by virtue of the laws of this state and having its
principal office herein. . . ."

Several arguments were advanced in support of the prop-
osition that the particular transfer did not come within the exemp-
tion provision. First it was urged that the statute should be strict-
ly construed against those claiming exemption. The court held that
although this was the rule as applied to general taxation, it was not
applicable, since the taxation of inheritances is a special form of
taxation. Next the court rejected the contention that the words "cre-
ated or existing under . . . the laws of this state and having a prin-
cipal office herein . . ." imported a corporation.

In determining whether the board of trustees under the
will constituted a charitable or educational society or institution
within the meaning of the statute, the court said:

"A 'society' has been defined as an association or company of persons united together for any common purpose (36 Cyc. 499); also as a number of persons united together by mutual consent in order to deliberate, determine, and act jointly for some common purpose (2 Bouvier's Law Dict. /Rawles Rev./ 1010). Persons thus associated for a purpose that is charitable would, ex vi termini, be a charitable society. It is evident that the Legislature intended that the word 'society,' as used in this statute, should include 'bodies of men united for the advancement of religion and learning and for other pious and charitable purposes,' thus recognizing the duty enjoined upon it by the Constitution to encourage such associations." (p. 968)

With regard to the fact that the "society" was formed **after** the decedent's death the court said:

"If the individuals named in the will as trustees had voluntarily associated themselves for the purpose of collecting funds to aid needy boys and girls in securing an education, or if the legacy in question had been given as a foundation of a society thereafter to be formed for that purpose, and they had associated themselves in accordance with the provisions of the will to receive the legacy, no one would question but that in so doing they had formed a charitable association or society. In that case their right to receive a legacy for the purpose of their association would not be taxable under the statute in question. We think it is unreasonable to say, because their association is effected by the will, that the fund provided by the bounty of the testatrix shall be depleted to the extent of the tax. The state can well afford, considering the purpose to which the money is devoted, to let it pass untaxed; and we are loath to believe that the Legislature intended to take toll of benevolences calculated to supplement the state's efforts in the cause of education, or to give such a construction to the statute as would tend to nullify its manifest policy in this regard, so long as the language of the statute does not compel it.

"We hold that under the provisions of this will the board of trustees are a charitable society within the meaning of the exemption clause of the statute,...." (p. 968)

There is no appreciable difference between the words "association", "society" and "organization". The words are frequently used interchangeably in common parlance, and appear, either specifically or in some variation of the root form, in definitions as explanatory of each other.

Webster's New International Dictionary, 2d. Ed., gives the following among its definitions of "organization":

"3. That which is organized; an organism; any vitally or systematically organic whole; an association of persons, as in a club.

"4. The executive structure of a business; the personnel of management, with its several duties and places in administration; . . . ."

Bouvier's Law Dictionary, Rawle's Third Revision, includes the following definition of "association":

"An organized union of persons for a common purpose; a body of persons acting together for the promotion of some object of mutual interest or advantage. Cent. Dict."

And a "society" is defined as "an association or company of persons united together for any common purpose." In Re Curtis' Estate, supra.

We think that the reasoning of the courts in the California case and in the Vermont case is applicable to the provision of our statute and that the property which will go to the funds provided for in Paragraph IX of the will may be regarded as passing "for the use of" an "organization".

We will now consider the specific questions which you raise with regard to the "Eddleman-McFarland Fund" provided for in Paragraph IX (b) of the will. As appears from the previously quoted portion of the opinion of the court in In Re Curtis' Estate, supra, the trust there provided for the distribution of funds to aid needy boys and girls in securing an education. Both parties in this case had presented arguments based on the theory that the question was whether the bequest was to any "educational" society or institution. The court stated that this was too narrow a view of the question and held that the fund was manifestly devoted to charitable purposes. This holding is in accord with the weight of authority. We do not think that the low interest loan scheme provided for in Paragraph IX (b) of the will makes the purpose of the testator or the character of the organization which will effectuate that purpose any less charitable. The sole question remaining is whether the fact that the

funds may be expended outside the State in securing training in certain instances will result in any loss of exemption.

It has been said that the purpose behind legislative exemptions from inheritance taxes of bequests to charitable institutions is to encourage liberality on the part of those testators whose means permit them to indulge their generosity in the line of promoting the public good by contributing to the cause of charity. In Re Clark, 131 Me. 105, 159 Atl. 500 (1932). The public is thus benefited directly in the benefit conferred upon its citizens, and further indirect benefit is found in the consequent reduction of the State's burden of caring for and advancing the interests of its citizens. 34 A.L.R. 634, 635. The reason for limiting such exemptions to charitable organizations who will use the funds within the State is therefore readily apparent. "It is the policy of society to encourage benevolence and charity. But it is not the proper function of a state to go outside of its own limits, and devote its resources to support the cause of religion, education, or missions for the benefit of mankind at large." In Re Prime, 136 N.Y. 347, 32 N.E. 1091, 1095 (1893). In Morgan v. A.T. & S.F. Ry. Co., (116 Kan. 175, 225 Pac. 1029,1031 (1924), the court said:

> "Taxes must be raised for the support and conduct of the government. Exemption to charitable, educational and religious organizations is bottomed upon the fact that they render service to the state, for which reason they are relieved of certain burdens of taxation. The effect of an exemption is equivalent to an appropriation. It cannot be said to have been the intent of the legislature to make appropriation for benefit or maintenance of foreign charities, which, at best, have a remote chance only of benefiting the citizens of this state."

We think that the foregoing authorities have correctly stated the purpose and scope of the type of exemptive provision which is found in our statute. Viewing the bequest in the light of these statements it is clearly exempt. The benefits directly conferred are conferred upon citizens of the State of Texas. To the extent that it aids these citizens in gaining an education and in thus fitting them for discharging the duties of citizenship, it has correspondingly reduced the State's duties in that respect and has indirectly reduced the amount of the individual taxpayer's obligation in support of this duty. These being the real benefits which will result from this charitable bequest, we do not think that the exemption is lost by incidental extra-state expenditures to accomplish these benefits in those instances in which proper training cannot be had within the state. You are therefore advised that the bequest made by Paragraph IX (b) is exempt from inheritance taxes.

## SUMMARY

Where the residue of an estate passes to a bank as trustee, the income to be expended as directed in will by the Rector, Wardens, and Vestry of a church, the property passes for the use of an "organization" within the meaning of Article 7122, V.C.S. Under terms of trust, provision for long-term low-interest loans to Tarrant and Parker Counties' boys and girls to assist them in getting an education is charitable in nature, and is exempt from Texas inheritance tax. In Re Curtis' Estate, 88 Vt. 445, 92 Atl. 965 (1915). Exemption from inheritance tax is not lost by possibility of extra-state expenditure of borrowed funds if training not available in Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Marietta McGregor Creel*

Mrs. Marietta McGregor Creel
Assistant

MMC/mwb

APPROVED

*Price Daniel*

ATTORNEY GENERAL