[Civ. No. 18273. First Dist., Div. Two. Nov. 24, 1958.]

Estate of MARY MOORE, Deceased. EMMA MOBERG, Appellant, v. JOSEPH L. SPENCER, Respondent.

John A. Swenson for Appellant.

E. Hugh Henes and Robert H. Walker for Respondent.

MARTINELLI, J. pro tem.*—The executor of the estate of Marion Moore filed his ''First and Final Account'' and petitioned for a final account and distribution and for the proration of the federal estate tax. Emma Moberg objected

---

*Assigned by Chairman of Judicial Council.

to the proration, the court denied the objection and the objector was ordered to pay to the executor $1,696.50 for federal estate tax purposes and $562.22 for California inheritance tax purposes. She appeals from that order.

Marion Moore died January 13, 1957, leaving a will dated June 25, 1956. On April 4, 1951, Mrs. Moore had opened a joint tenancy savings account in her own name and the name of Emma Moberg, her employee for 20 years. A balance of at least $10,000 was maintained in the account and at the time of Mrs. Moore's death the amount on deposit was $10,201. Other joint bank accounts were created by decedent with other joint tenants.

By her will Mrs. Moore made specific and pecuniary bequests to numerous legatees and the residue of her estate was left to eight persons.

Paragraph Ninth of the will provided:

"*NINTH*: I direct that all estate, inheritance or other taxes that may become payable during the period of the administration of my estate shall be paid by my executors out of the residue and remainder of my estate. It is my will and desire that all pecuniary and specific legatees shall receive their legacies in full without reduction for taxes."

 Appellant contends that by including this paragraph in her will decedent intended that the taxes on the entire estate should be paid from the residue. The trial court apparently found and respondent executor asserts that the decedent intended only that the taxes on her estate passing by the will should be paid from the residue.

Probate Code, section 970, provides:

"*Proration; persons interested in estate; exceptions*

"Whenever it appears upon any accounting, or in any appropriate action or proceeding, that an executor, administrator, trustee or other fiduciary has paid an estate tax to the Federal Government under the provisions of any Federal estate tax law, now existing or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, and except in a case where by written instrument executed inter vivos direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such inter vivos instrument, shall be equitably prorated among the persons interested

in the estate to whom such property is or may be transferred or to whom any benefit accrues.''

Thus the question for this court is whether or not the testatrix otherwise directed in her will how the taxes should be paid on her gross estate.

Appellant relies on the first sentence of paragraph ninth and asserts that these words taken in their ordinary and grammatical sense (Prob. Code, § 106) clearly mean that *all* taxes that became payable during the period of administration of the estate should be paid out of the residue and remainder of the estate. This, appellant contends, would include the taxes on the joint bank account.

California cases with similar will provisions are cited. In *Estate of Wilson*, 154 Cal.App.2d 24 [315 P.2d 451], there was a direction in the will stating that ''all inheritance, succession and estate taxes, Federal or State, upon any transfers of property included in my gross estate for the purpose of determining such taxes, which shall become payable by reason of my death, shall be paid out of my residuary estate.'' It was contended that this provision constituted a direction against equitable proration of death taxes within the meaning of section 970 and the court determined that all taxes on all legacies, specific and residuary should be paid out of the residue of the estate before the residue could be distributed. The appellate court held that the holding of the trial court ''reasonably appears to be consistent with such intent [of the testator]'' since the will stated that *all* death taxes upon *any* transfers were to be paid out of her residuary estate.

In *Estate of Parker*, 98 Cal.App.2d 393 [220 P.2d 580], the will stated: ''Every legacy, bequest, devise and interest given under this Will or any Codicil to it, *and any property passing* in the probate of my estate or *by reason of my death*, shall be delivered free from all Federal Estate Tax and all Inheritance taxes imposed by any state, territory, or district of the United States. Such taxes shall be paid out of the residue of my estate.'' (Emphasis added.) The appellate court affirmed the holding of the trial court that the testatrix intended that the taxes be paid on property over which she exercised a power of appointment in her will even though this property was not a part of her estate. The words ''any property passing . . . by reason of my death . . .'' were broad enough to include the property passed by power of appointment.

In *Estate of Pearson*, 90 Cal.App.2d 436 [203 P.2d 52], the testator's will stated that the property devised ''shall be free

and clear of all liens of any kind and character and description, and if there are any such liens at the time of my death, the same shall be first paid and discharged by my executor before the payment or distribution of any other bequests and devises hereinafter provided.'' The appellate court, annulling the order of the trial court held that the liens created by the applicable taxing statutes were clearly intended to be within the ''all liens'' wording of the will provision.

In *Estate of McAuliffe*, 132 Cal.App.2d 476 [282 P.2d 541], the will stated ''. . . that all expenses and taxes payable by reason of my demise, be paid by my estate and not chargeable to the beneficiaries.'' This language was held to be simple, clear and specific and the court stated that ''There can be no doubt about the testatrix' intention. . . . She has *otherwise directed* within the meaning of section 970 of the Probate Code.

Other California cases interpret similar will provisions. (*Estate of Hotaling*, 74 Cal.App.2d 898 [170 P.2d 111]; *Estate of Irwin*, 196 Cal. 366 [237 P. 1074]; *Estate of Nesbitt*, 158 Cal.App.2d 630 [323 P.2d 474].)

None of the cases cited by appellant and discussed above involved nonprobate property nor did those cases involve the interpretation of language similar to that in the second sentence of paragraph ninth in the instant case providing that ''It is my will and desire that all pecuniary and specific legatees shall receive their legacies in full without reduction for taxes.''

Both parties cite authorities from other jurisdictions as bearing upon the construction of the will and as involving nonprobate property. Since each case depends on its own peculiar facts it would seem unnecessary to discuss all of the cited cases. However, two New York cases would seem helpful in aiding interpretations. (New York has a statute similar to Prob. Code, § 970.) *In re Halle's Will*, 270 App.Div. 619 [61 N.Y.S.2d 694], involved a will provision similar to the first sentence of paragraph ninth. It was contended and the court held that such provision directed the payment of the taxes on the decedent's interest in joint tenancy bank accounts be paid from the residuary estate. The court was influenced by the fact that the other owner of these bank accounts was, as indicated by other provisions in the will, the ''primary object of testatrix' bounty.'' Appellant, in the instant case, was not such a primary beneficiary.

*In re Lemmerman's Will*, 199 Misc. 49 [104 N.Y.S.2d 665],

involved a will provision very similar to paragraph ninth. The testator provided that ''I order and direct that all transfer, succession and inheritance taxes be paid out of my general estate, so that the same shall not be chargeable to, or paid by, any devisee or legatee herein named.'' The issue, as in the instant case, was whether the above language constituted direction against apportionment. It was stated by the court that ''. . . where the generality of the direction in the will to pay death taxes out of the residuary estate is qualified by language indicating an intent to exonerate devisees and legatees named in the will, no intent to exonerate nontestamentary beneficiaries is implied.'' The court also pointed out that there was no mention made in the will of beneficiaries receiving property apart from the will.

Appellant seeks to distinguish these cases from the Lemmerman decision on the ground that the language which might be interpreted as being qualifying is in a separate sentence while the Lemmerman case involved a single sentence with a ''so that'' clause. This distinction does not make unreasonable an interpretation that the second sentence does qualify the generality of the first.

The fact that appellant cannot be classed as a ''primary'' beneficiary and the fact that the will does not mention the joint tenancy bank account, both support the order of the trial court.

Even if the interpretation urged by appellant could be accorded hospitality as reasonable and tenable, the trial court's interpretation is consistent with the testatrix' intent. It is not an unreasonable interpretation that the second sentence of paragraph ninth qualified the first and that, therefore, the testatrix intended to direct that only the taxes on property passing by her will should be prorated.

To escape proration the joint tenant (a beneficiary in the generic sense only) must bring himself within the class or group of persons whose share in the estate was by decedent absolved or exempted from the diminishing burden of paying any tax. These persons the testatrix identified as ''pecuniary and specific legatees.'' Truly appellant was a pecuniary beneficiary in the sense that by virtue of the joint account and decedent's death she benefited to the extent of the balance remaining in the joint account, but appellant's benefits or pseudo rights of inheritance (to call them such) spring not from death alone, nor from a testamentary disposition, nor by virtue of being a pecuniary or specific legatee.

■ A legatee's benefits are begotten and measured by the death of a testatrix in the light of her will and not during life. Such is not true in the case of a surviving joint tenant. His benefits are indigenous to the contract and he "takes" not by virtue of death alone, but rather by virtue of death and the joint tenancy created by contract during the life of the testatrix. ■ Manifestly appellant acquired no right or benefit from the will, nor by any act of the testatrix, for her rights would not have been different in the event of intestacy. Decedent's remarkable choice of clarity limits the members of the class for whom she provided "absolution" from taxes to "pecuniary and specific *legatees*" (Emphasis ours) rather than beneficiaries in the general sense. Decedent's "absolving clause" may well have been an integral part of a plan to secure or guarantee to each pecuniary and specific legatee the precise sum, no more, no less than the amount or article bequeathed to each with the result that while the will remained unchanged the precise quantitative plan of decedent remained in force.

As distinguished from this the testatrix was not constant in her regard for her appellant joint tenant, for as counsel for appellant urges in his opening brief the body of the joint tenancy was a vagrant thing, created in 1951 with a deposit by decedent in the sum of $3,000. Three months later it was increased by decedent to $10,000. Interest was withdrawn by decedent from time to time. Either joint tenant, during life may have altered the substance of the joint account. Appellant's proprietary interest in the account did not commence upon death but continued from the opening of the account. The death of decedent merely foreclosed further alteration of the amount in joint tenancy. Appellant was an "owner" prior to decedent's death and as such was not a pecuniary or specific legatee, such as she was under paragraph eighth of the will to the extent of a specific bequest of a diamond brooch, sewing machine and other articles and personalty. These bequests she could not receive but for death and the will in question.

Looking to other paragraphs in the will for some small "leak" or clue to decedent's plan for preference, if any, between the objects of her bounty we find no concerted or consolidated pattern. Indeed each beneficiary was left to the individual paragraph whence spring his benefits, as for instance the persons (excepting two) in paragraph fourth, wherein the greater sums were bequeathed, were preferred to

others, for under paragraph tenth they as an entire group, although according to ratio or percentage respectively, were bequeathed the entire residue of the estate, if any.

Likewise under paragraph fourth, wherein the larger bequests were contained, the testatrix provided that if any of said legatees should die before distribution their respective legacies were to pass to their heirs, respectively; but not so in the case of the legatees in paragraph fifth, sixth or eighth. We learn thus that the testatrix was deliberate. Had she been inclined to absolve appellant she could easily have done so.

Paragraph eleventh of decedent's will spells with its utter sincerity and near apology the desires which lay in her being. With stark nakedness she exposed the content of her over-all thinking in words no less clear than "All of the foregoing bequests are made upon the assumption that my estate will be sufficient to pay them after paying the expenses of my last illness, funeral and administration charges." (Then follows the proration clause which noteworthily provides for proration only among the group who take under paragraph fourth and none others.)

By these observations we are led to the belief that decedent gave much thought to the various objects of her bounty, but in none of her deliberations did she find room for appellant beyond the naked circumstances of the joint tenancy created prior to the provisions for the other persons to whom she felt well disposed.

Common sense and logic dictate that by paragraph ninth of her will the testatrix intended that the only "taxes" contemplated by the expression "taxes that may become payable during the period of the administration of my estate" were such taxes as would be incurred by the disposition and passing of the property disposed by her will, or contained within or being a part of her estate actually "administered" or coming into the possession of her executor.

Decedent, having actually denominated her multiple bequests, would seem to have limited her provision for payment of all taxes out of her residue to those taxes which might cling as wart-like excrescences to her respective bequests, and threaten to reduce them below her express provisions. The testatrix' express provision for taxes fell short of the language employed in *In re Wilson's Estate*, 154 Cal.App.2d 24 [315 P.2d 451], cited by appellant as controlling, for in that case the will invaded the realm of "all inheritance, succession and

estate taxes . . . *upon any transfers of property included in my gross estate for the purpose of determining such taxes.*" (Emphasis ours to indicate language foreign to the instant will.)

The clear language of paragraph ninth, viz: "It is my will and desire that all pecuniary and specific *legatees* [emphasis ours] shall receive their legacies in full without reduction for taxes" indicates that none other than a "legatee" can claim the benefit of the "tax free" clause.

Since it cannot be said that the trial court's interpretation was unreasonable, this court should not substitute a different conclusion even though it may be as clearly tenable as the one attacked. (*Estate of Wilson,* 154 Cal.App.2d 24, 26 [315 P.2d 451] ; *Estate of Parker,* 98 Cal.App.2d 393, 399 [220 P.2d 580] ; *Estate of Pearson,* 90 Cal.App.2d 436, 438 [203 P.2d 52].)

The order subject of this appeal is hereby affirmed.

Kaufman, P. J., and Draper, J., concurred.