[L. A. No. 28168. In Bank. Aug. 25, 1966.]

Estate of GIOVANNI VAI, Deceased. ALAN CRANSTON, as State Controller, etc., Petitioner and Respondent, v. HENRY G. BODKIN, as Executor, etc., et al., Objectors and Appellants.

Michael G. Luddy, Harry A. Olivar, George R. Phillips and Henry G. Bodkin, Jr., for Objectors and Appellants.

Charles J. Barry, Walter H. Miller and James F. Rogers **for** Petitioner and Respondent.

MOSK, J.—This is an appeal by the executors of the will of Giovanni (John) Vai from an order fixing an inheritance tax and overruling objections to a report of the inheritance tax appraiser imposing a tax on property placed in trust for John's daughter under the terms of his will. ▮ The question for determination is whether an inheritance tax may be levied on property which a testator leaves to a daughter by will pursuant to a valid contract entered into during his lifetime. We hold, for reasons which shall hereinafter appear, that such a bequest is not subject to an inheritance tax if the testator has received full consideration in money or money's worth, within the meaning of the inheritance tax law, for the promised bequest.

John and Tranquilla Vai were married in 1907. They had one daughter, Madeline (now 40 years old) who is mentally arrested and requires constant care and attention. After a period of marital discord, Tranquilla filed an action for separate maintenance against John. In March 1953 they entered into a property settlement agreement through which Tranquilla was to receive less than half the community property but John undertook to support Madeline during his lifetime, to hold his wife harmless for Madeline's support, and to provide in his will that a sufficient amount of property be left in trust for Madeline to support her as long as she lived.[1]

---

[1]Article IV of the property settlement agreement provides in part, "The Husband covenants and agrees to assume full responsibility for the support, maintenance and care of said Madeline Vai and represents that he has heretofore made a Will wherein and whereby a trust is created for the support, maintenance and care of said Madeline Vai after the death of the Husband. The Husband hereby covenants and agrees and binds himself to maintain in full force and effect, a Last Will and Testament which shall provide for the distribution into a trust of which such trust said Madeline Vai or her duly appointed guardian shall be the beneficiary, an amount of money or property as will, upon the Husband's death, fairly and adequately pay for and discharge any and all expense for the care, support and maintenance of said Madeline Vai during the remainder of her lifetime. The Hus-

Subsequently, Tranquilla's action for separate maintenance was abandoned, but she left the family home and moved to another residence.

In April 1953 John executed a will in which he carried out the obligations imposed upon him by the agreement and left the residue of his estate in a trust under the terms of which the income would be paid to Madeline's guardian for her support and maintenance. He died on February 14, 1957.

It is estimated that the cost of supporting Madeline is $2,500 a month and, when this amount is capitalized, it represents a liability of $515,341.56 as of the date of John's death. The value of the residue considerably exceeded the amount necessary for Madeline's support, but the issue in controversy here is confined to the taxability of the $515,341.56. The inheritance tax appraiser representing the Controller, petitioner in this proceeding, imposed a tax on the entire residue, and the executors objected to his report, claiming that $515,341.56 should be allowed as a deduction for the purpose of calculating the inheritance tax due because assertedly this sum was left by John in satisfaction of a valid obligation, supported by adequate consideration. The probate court overruled the objections, and the executors appeal from the court's order.

Shortly after John's death, Tranquilla brought an action to rescind the property settlement agreement on the ground that John had fraudulently concealed community assets from her. We held, in *Vai* v. *Bank of America* (1961) 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247], that John had committed constructive fraud as a matter of law and that Tranquilla was entitled to rescind the agreement.[2] This decision and its consequences will be discussed in the portion of this opinion concerned with the question of consideration.

---

band further covenants and agrees to hold harmless the Wife during the balance of the lives of the parties hereto, for the care, support and maintenance of said Madeline Vai.'' The will ''heretofore made'' referred to in this provision was apparently revoked and a new will executed by John in April 1953.

[2]The executors claim that we merely held in the *Vai* case that Tranquilla was not barred from rescinding the agreement by laches. However, the opinion, after holding that John was guilty of constructive fraud as a matter of law, states, ''It is manifest from the foregoing that plaintiff is neither estopped nor barred by laches from seeking to rescind the property settlement agreement, *and that she is entitled to the relief sought because of the constructive fraud of her husband.*'' (Italics added.) (56 Cal.2d at p. 344.) The relief Tranquilla sought is described at page 333 of the opinion as rescission of the agreement on the ground of fraud, recovery of part of the property received by John under the agreement, and damages in the event recovery thereof cannot be obtained.

Section 13601 of the Revenue and Taxation Code provides, "*A transfer by will* or the laws of succession of this State from a person who dies seized or possessed of the property transferred while a resident of this State is a transfer subject to this part." (Italics added.) The executors, in contending that the money left for Madeline's support is not taxable, assert that it was transferred to her pursuant to the property settlement agreement between John and Tranquilla rather than "by will," that as soon as the agreement was signed Madeline had a vested right to support from her father which she could have enforced as a third party beneficiary in an action for damages or quasi-specific performance without regard to the will, and that the will was merely the instrument by which John's obligation under the agreement was performed. They place reliance primarily upon *Estate of Belknap* (1944) 66 Cal.App.2d 644 [152 P.2d 657]. In discussing this contention, we shall first assume arguendo that John received adequate consideration within the meaning of the inheritance tax law for his bequest to Madeline and that the property settlement agreement is valid and sufficiently certain in all respects.

In *Estate of Belknap* (1944) *supra,* 66 Cal.App.2d 644, a husband and wife entered into a property settlement agreement which provided that the wife was to receive a stipulated monthly sum during the husband's lifetime and that he would authorize his executor by the terms of his will to purchase a $20,000 annuity for her, from which she would receive the income. It was held that the value of the annuity bonds was not subject to inheritance tax because the transfer was effected by virtue of the property settlement agreement rather than by means of the will. The court found that the will was merely the conduit through which the husband's obligations under the agreement were fulfilled, that the amount of the wife's interest in the husband's property was fixed by the agreement and was not changed by the will, that the provision in the will for the purchase of the bonds merely secured the vested interests transferred by the agreement, and that the agreement was enforceable by the wife without regard to the will.

The rationale of *Belknap* is apposite here. If John had failed to carry out his obligations under the property settlement agreement Madeline could have enforced her rights as a third party beneficiary by an action at law for damages or by an equitable action for quasi-specific performance. (*Brown* v.

*Superior Court* (1949) 34 Cal.2d 559, 563-564 [212 P.2d 878].)
The will could neither add to nor subtract from the benefits to
which she was entitled by the agreement and, as in *Belknap,*
the will was merely the conduit through which John's obliga-
tions under the agreement were performed. While the enjoy-
ment of the benefits Madeline was to receive under the will
and the actual transfer of the property to her were postponed
until John's death, her right to receive such benefits upon his
death arose immediately upon the signing of the agreement,
and the will was merely the instrumentality through which he
fulfilled his obligations. Madeline's interest cannot be ren-
dered taxable by the mere fact that John performed, by a
provision in his will, an obligation for which his estate would
have been liable in any event.

The Controller argues that *Belknap* is distinguishable
because there the amounts the husband agreed to pay were
specified in the agreement, whereas in the present case the
sums which John was to provide for Madeline's support dur-
ing her lifetime and at his death were not specified and could
vary, depending upon the size of John's estate and Madeline's
needs.[3] This argument goes to the question whether the
property settlement agreement in the present case is enforce-
able and sufficiently certain, but does not relate to whether,
assuming the enforceability of the agreement, the life estate
must nevertheless be deemed taxable as a transfer by will.[4]
Moreover, the amount which Madeline needed for her support
readily could have been made certain by being reduced to a
monetary sum, as was done in the present proceeding, and
John's promise in the agreement to leave her an amount of
money in his will which would be necessary for her support
was not made contingent upon the size of his estate.

---

[3]The agreement provided only that the will would leave in trust for
Madeline's benefit ''an amount of money or property as will . . . fairly
and adequately pay for and discharge any and all expense'' for Madeline's
care and support.

[4]The Controller also contends that there is language in the agreement
in *Belknap* which distinguishes it from the contract involved here. In
*Belknap* it was provided, ''Said party of the first part *does by these
presents,* promise and agree by and through his Last Will and Testament
*and does hereby authorize, empower, direct and command* the Executor
of his said Last Will and Testament, to purchase immediately upon his
appointment an annuity . . . .'' While it is true that this provision pur-
ported to give a present direction to the executor to carry out the terms
of the agreement, and article IV of the agreement between John and
Tranquilla, quoted in footnote 1, only recites that John shall keep in full
force and effect a will which would carry out his obligations, this differ-
ence seems of little significance.

*In re Howell's Estate* (1931) 255 N.Y. 211 [174 N.E. 457], cited by the Controller, is distinguishable. There, the separation agreement provided that the wife would receive under her husband's will one-third of the net income from his estate. The court held that the agreement did not recognize the existence of a specific debt and that the husband agreed only to devise a portion of his estate if he had one. In the present case, John agreed to provide sufficient funds in his will for Madeline's support, regardless of the size or character of his estate.

The Controller relies principally on the case of *Estate of Grogan* (1923) 63 Cal.App. 536 [219 P. 87], in support of his claim that Madeline's interest is subject to a tax. In *Grogan* a husband and wife entered into a property settlement agreement which provided that the husband would pay his wife $3,000 a year during his lifetime and that, after his death, she would receive the income from a trust fund created by his will, which would consist of one-half of his estate, but not exceeding $50,000. The parties were subsequently divorced, and the husband made a will in conformity with the agreement. A tax was imposed on the value of the life estate created in the will and the wife claimed, as do the executors in the present case, that the will merely operated as the fulfillment of the obligation of the husband under the agreement and did not constitute a bequest or transfer within the meaning of the statutes governing inheritance taxes. Section 2 of the inheritance tax act provided at the time, ''A tax shall be, and is, hereby imposed upon the transfer of any property . . . (1) When the transfer is by will.'' The court, after reviewing authorities from a number of jurisdictions, held that every transfer in the nature of a change of ownership effected through a will was subject to an inheritance tax under the statute.

The *Grogan* opinion states, at page 544, ''No exception of the character claimed by appellant here is mentioned in the California statute. Nothing is said about any transfer by will arising out of an agreement, or as compensation for service, or in consideration of anything whatsoever. It matters not whether the legacy be a gratuity or 'for money's worth.' There is nothing in the statute which would indicate an intention on the part of the legislature that there should be any limitation on the apparently plain language contained therein, or that there should be any exception whatsoever thereto. Everything in the nature of a change of ownership effected through a will is apparently included. The reason for such

transfer is not taken into consideration. The *result* is all that is considered; that is, the transfer itself. Viewed from one standpoint, it might be said that Mrs. Grogan's right was one which rested in the agreement entered into between her and her husband; that she had in effect bought and paid for everything that she was to receive, and that nothing remained to be done but the turning over of the property to her through the medium of the will. But even that does not surmount the obstacle. . . . The statute here does not provide for a tax because someone has a *right* arising out of a debt or otherwise, but only when a *transfer* of property is brought about by means of a will is a tax imposed. It is a tax upon the vehicle carrying the right, rather than a tax upon the right itself. It is in effect a declaration of law that when a will is used as a means of conveyance of property a tax must be paid for that privilege.'' (Accord, *In re Gould's Estate* (1898) 156 N.Y. 423 [51 N.E. 287].)

We conclude that the foregoing unequivocal rule of *Grogan* must be disapproved, for it makes the imposition of the tax dependent upon form rather than substance. The inheritance tax is imposed on the *beneficial* succession to property. (*Estate of Barter* (1947) 30 Cal.2d 549, 557 [184 P.2d 305] ; *Estate of Madison* (1945) 26 Cal.2d 453, 458 [159 P.2d 630].) *Grogan* holds that everything in the nature of a change of ownership effected through a will is taxable because the tax is on the *vehicle* carrying the right rather than on the right itself and that, therefore, a bequest in a will in payment of a debt is subject to a tax. The anomalous result of this rule is that a tax must be levied whenever a testator provides in his will that a creditor is to receive a stated sum in payment of a debt owed by the testator, whereas the tax would be avoided by the mere failure of the testator to specify that the debt be paid, requiring the creditor to receive payment by means of filing a claim against the estate. The Legislature could not have intended to make the imposition of the tax depend upon such fortuitous considerations.

Moreover, as the executors correctly argue, acceptance of the rule in *Grogan* would place a premium on the violation of agreements similar to the one involved here. If John had breached his agreement and failed to provide in his will for Madeline's support and she had recovered the value of her life estate in an action for damages against the estate, the amount of her recovery would not be, under *Grogan*, a transfer of property ''brought about by means of a will'' and, presum-

ably, no tax liability would attach.[5] ■ As suggested above, when the testator provides in his will for the payment of a valid obligation supported by adequate consideration within the meaning of the inheritance tax law, and the obligation would have been enforceable without regard to the provisions of the will, it is erroneous to conclude that the payment is taxable as a "transfer by will." The case of *Estate of Grogan* (1923) *supra,* 63 Cal.App. 536, is disapproved insofar as it is inconsistent with the views expressed herein.[6]

■ As a result of this conclusion, we must also hold that the provisions of sections 13601-13603(a) of title 18 of the California Administrative Code, which are in accord with the *Grogan* rule, do not represent a correct interpretation of legislative intent.[7]

---

[5]The Controller relies on *In re Kidd's Estate* (1907) 188 N.Y. 274 [80 N.E. 924], for the proposition that if Madeline had sued the estate to recover the amount to which she would have been entitled under the property settlement agreement, she would nevertheless have been required to pay an inheritance tax on the sum she recovered. In *Kidd,* a testator failed to carry out the terms of an agreement to leave property to a stepdaughter in his will, and she successfully prosecuted an action to recover the property which he had agreed to convey to her. It was held that she was required to pay an inheritance tax on the amount of the judgment because she would have been subject to the tax if the decedent had performed his agreement. If *Grogan* is correct in holding that the basis on which the inheritance tax is imposed is that a will is used as the means of carrying out the testator's intention, it would seem to follow that if the beneficiary receives the property by means of a court judgment rather than under the will, the property is not taxable *as a transfer by will.* This distinction was recognized in *In re Gould's Estate* (N.Y. 1898) *supra,* 51 N.E. 287, a case upon which the Controller also relies, in which it was stated that if the beneficiary of a contract to make a will had elected to recover by bringing a suit against the estate on the basis of the contract rather than by accepting the bequest in the will, the amounts recovered in such a suit would not have been subject to the tax because there would have been no transfer by will.

[6]It has been suggested that *Grogan* has been overruled in *Estate of Rath* (1937) 10 Cal.2d 399 [75 P.2d 509, 115 A.L.R. 836]. However, that case involved a different factual situation and *Grogan* was specifically mentioned as being distinguishable. In *Rath,* a husband and wife entered into an agreement under which the wife agreed to leave her separate property to her husband if he survived her, and the husband agreed to leave so much of the property as was not necessary for his support to the wife's nephews, upon his death. The husband carried out his promise, and the court held that the property was not taxable as a transfer from the husband to the nephews, since he was merely a trustee of the property for them, but was taxable as a transfer from the wife's estate to the nephews. The opinion distinguishes *Grogan* on the ground that it involved a situation in which the testator disposed of his own property, not property held by him in trust for others. (10 Cal.2d at p. 407.)

[7]The section provides: "A transfer by will is subject to the Inheritance Tax Law even though made pursuant to an agreement between the transferee and the decedent for an adequate and full consideration in money or money's worth which was received by the decedent. In such case, the trans-

■ Another contention made by the Controller is that Madeline's life estate must be held subject to taxation under the provisions of section 13981 of the Revenue and Taxation Code. The section provides, ''This article [article 2, relating to deductions] is a limitation on deductions allowable. It is not intended by this article to allow as a deduction anything that does not actually reduce the amount of an inheritance or transfer.'' It is the Controller's claim that, whether Madeline takes the value of her life estate as a creditor or as a legatee she gets the same amount of money from the estate, and that the value of the life estate cannot be allowed as a deduction because it ''does not actually reduce the amount of an inheritance or transfer.''

It is true that Madeline's resources would be the same whether she is a creditor or a legatee, but only because in the present case she fortuitously occupies the role of residuary legatee and at the same time a posture similar to that of a creditor insofar as John received consideration for his promise to leave property to her. Section 13981 could not have been intended to penalize her merely because she receives property in this dual capacity. We conclude, therefore, that the word ''transfer'' as used in the section was not intended to relate to a situation in which the beneficiary has a right to receive the transfer independently of the will.

■ The property left by John for Madeline's support is free from taxation only if the circumstances indicate that he received adequate consideration for his promise to leave it to her. We come, therefore, to the question whether such consideration is present here. The executors urge that we must assume that John received consideration for his promise to support Madeline because the property settlement agreement was in writing (Civ. Code, § 1614), and that, therefore, John left the amount in question to Madeline in satisfaction of a valid obligation supported by an adequate consideration.

■ The difficulty with this contention is the assumption that, merely because there may be sufficient consideration as between the spouses in a property settlement agreement, it necessarily follows that there is also consideration for purposes of determining whether an inheritance tax is due. This conclusion is unwarranted. While a grossly disproportionate division of property between spouses does not render the agreement void for inadequate consideration, since intangible

feree takes from the decedent under the will and not by virtue of the agreement.''

factors as well as the property received by the parties are weighed in the balance in determining the adequacy of consideration as between spouses, the tax consequences of the contract are another matter. (Cf. *Chemical Bank New York Trust Co.* v. *United States* (1966) 249 F.Supp. 450, 459-460.) Obviously, there are unlimited contrivances for avoidance of the inheritance tax by the device of a bequest in fulfillment of an obligation undertaken in a property settlement agreement, for which the testator does not receive a full consideration *in money or money's worth*.

■ We are aided in determining what constitutes consideration for tax purposes by the provisions of the Revenue and Taxation Code relating to *inter vivos* transfers. (Rev. & Tax. Code, §§ 13641-13648.) These sections provide that where a testator has made an actual transfer of property during his lifetime, the transfer is taxable under the inheritance tax law to the extent that it was made without a valuable consideration, if the testator retained certain specified incidents of ownership over the property while he was alive.[8] The purpose of these provisions is to prevent evasion of the inheritance tax. (*Estate of Madison* (1945) *supra,* 26 Cal.2d 453, 463.) At the time of John's death, section 13641 of the code provided that as to *inter vivos* transfers, a valuable and adequate consideration was consideration *in money or money's worth to the full value* of the property transferred[9] and sections 13641-13648(a) of title 18 of the California Administrative Code provide that consideration in money or money's worth does not include any consideration which is not reducible to money or a money value, such as love or affection or a promise of marriage.

Analogism dictates that we apply the same standard of

[8]For example, an *inter vivos* transfer is taxable to the extent that the testator has failed to receive consideration for it where the transfer is made in contemplation of death (Rev. & Tax. Code, § 13642), where possession or enjoyment does not take place until after the death of the testator (Rev. & Tax. Code, § 13643), where he has retained a life interest in the income (Rev. & Tax. Code, § 13644), and where the transfer was made by means of a revocable trust (Rev. & Tax. Code, § 13646).

[9]Section 13641 was amended in 1959, after John's death, to provide as follows: ''If a transfer specified in this article is made during lifetime by a resident . . . for a consideration in money or money's worth, but the transfer is not a bona fide sale for an adequate and full consideration in money or money's worth, the amount of the transfer subject to this part shall be the excess of (a) The value, at the date of the transferor's death, of the property transferred, over (b) An amount equal to the same proportion of the value, at the time of the transferor's death, of the property transferred which the consideration received in money or money's worth for the property transferred bears to the value, at the date of transfer, of the property transferred.''

consideration in the situation involved here, where no actual transfer of property occurred during the testator's lifetime but the right to the transfer upon the testator's death is based on a valid contract into which he had entered. If we accepted the view that what is consideration between the parties to an agreement in the situation involved here must also be deemed consideration for the purpose of determining whether an inheritance tax is payable, it would mean that property transferred by a testator who makes an actual transfer during his lifetime but retains some incidents of control over it, is subject to a greater tax burden than property over which a decedent has retained complete ownership during his life. The Legislature could not have intended such an anomalous result.

We must determine, therefore, whether John received consideration in money or money's worth under the definition set forth above, for his promise to leave money in his will for Madeline's support, for it is only to this extent that the amount in question is free from the inheritance tax. As stated above, a short time after John's death, Tranquilla brought an action to rescind the property settlement agreement on the ground that John had fraudulently concealed community assets from her. The trial court found against Tranquilla, but in *Vai* v. *Bank of America* (1961) *supra*, 56 Cal.2d 329, we held that she was entitled to rescind the agreement. Subsequently, Tranquilla entered into a stipulation with the executors under which she received $500,000 as damages for John's fraud. She also waived her rights under the property settlement agreement, except the right to have John carry out his obligations for Madeline's support. Judgment by stipulation was entered, setting forth the terms of the settlement and decreeing that the agreement between John and Tranquilla was valid.

In determining whether John received consideration for his promise, we cannot ignore events which occurred after his death, insofar as they affected the terms of the original agreement. In addition to the amount specified in the original agreement,[10] Tranquilla received $500,000 as compensation for John's fraud. However, if she had rescinded the original agreement, as she was entitled to do, she would in all likelihood have been entitled to considerably more than these sums, since John's estate at the time of his death amounted to over

[10]Tranquilla received only a fraction of the community property in the original agreement, as shown by our opinion in *Vai* v. *Bank of America* (1961) *supra*, 56 Cal.2d 329.

$1,800,000. The estate was enriched, therefore, to the extent that she received less than she was entitled to by rescission. Under these unusual circumstances, the question of the extent to which John received consideration for the $515,341.56 must be measured by the difference between what Tranquilla would have received, had she rescinded the agreement, and what she actually received under the agreement and the subsequent compromise settlement. This is the measure of the consideration received by John for his promise to leave money in trust for Madeline's support and is, accordingly, the limit of the deduction allowable. The record does not contain information sufficient to permit this court to make the necessary calculations, and the matter must therefore be returned to the probate court for the purpose of ascertaining the deduction allowable.

The executors contend that consideration for John's promise to support Madeline may be found in the provisions of the agreement that he would only be liable for $10,000 of Tranquilla's attorney's fees, that he could retain all income from tax refunds as his separate property, and that he was free from liability for Tranquilla's obligations. There is no indication in the record as to the amount of Tranquilla's attorney's fees and no claim that she had any unpaid obligations or that John expected to or did receive any tax refunds. ▮▮▮ The fact that John was entitled to Madeline's custody cannot be viewed as consideration "in money or money's worth" as that term is defined above.

The order is reversed for further proceedings consistent with the views expressed herein.

McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

TRAYNOR, C. J.—I dissent.

The Legislature has provided in plain terms that every transfer by will is subject to the inheritance tax.[1] A testator's transfer by bequest or devise in performance of an agreement is no less a "transfer by will" than a bequest or devise for any other purpose. Nothing in the present statute or its prede-

---

[1]Revenue & Taxation Code, section 13401: "An inheritance tax is hereby imposed upon *every* transfer subject to this part."

Revenue & Taxation Code, section 13601: "*A transfer by will* or the laws of succession of this State from a person who dies seized or possessed of the property transferred while a resident of this State is a transfer subject to this part." (Italics added.)

cessors suggests that a transfer by will pursuant to an enforceable contract is excepted from the normal operation of the tax. In all the years since the Legislature first selected succession as a subject of tax (Stats. 1853, ch. 127, art. V [Comp. Laws of Cal., Garfielde, 1853, p. 678]) it has never so much as intimated in any provision for computation of the tax, deductions or exemptions, or in any other provision that it meant to exclude from "transfer by will" a transfer by will pursuant to a contract.

The 1893 inheritance tax statute (Stats. 1893, ch. 168, p. 193) and subsequent statutes have also imposed an inheritance tax on certain *inter vivos* transfers.[2] The purpose of this tax is to reach *inter vivos* transfers so like testamentary dispositions that they might be used in lieu thereof to avoid the inheritance tax. (*Estate of Potter* (1922) 188 Cal. 55, 63 [204 P. 826]; *Estate of Thurston* (1950) 36 Cal.2d 207, 210-211 [223 P.2d 12].) The tax on such *inter vivos* transfers "does not turn upon the intention of the grantor, but upon the character of the interests created by the transfer." (*Estate of Hyde* (1949) 92 Cal.App.2d 6, 14 [606 P.2d 420].)

The literal terms of the earlier California statutes would have imposed a succession tax on any *inter vivos* transfer made in contemplation of death, or intended to take effect in possession or enjoyment at or after the transferor's death, even though the transferee had bought and paid full value for his interest. The California courts, however, like those of most other jurisdictions (see 7 A.L.R. 1053; 157 A.L.R. 984), held that the statute was not designed to tax such transfers made for valuable and adequate consideration. The theory of these decisions is that "The result of such sales, at full value, would in no wise defeat the statutory purpose; the estate would not be depleted, but merely changed in form." (*In re Kraft's Estate* (1928) 103 N.J.Eq. 543 [143 A. 764, 766]; *In re Orvis' Estate* (1918) 223 N.Y. 1 [119 N.E. 88, 89, 3 A.L.R. 1636].) The addition of the words "made without valuable and adequate consideration" to the description of taxable *inter vivos* transfers in the 1911 California inheritance tax statute (Stats.

---

[2]In taxing *inter vivos* transfers the present statute declares the Legislature's "purpose . . . to tax every transfer made in lieu of or to avoid the passing of property by will or the laws of succession." (Rev. & Tax. Code, § 13648.) The statute also taxes the vesting of the survivor's right in joint tenancy (Rev. & Tax. Code, § 13671) or homestead (Rev. & Tax. Code, § 13622), the granting of a family allowance in probate (Rev. & Tax. Code, § 13623) and the transfer of the proceeds of life insurance (Rev. & Tax Code, § 13722).

1911, ch. 395, p. 713) "served but to clarify and not to change the pre-existing law." (*Estate of Reynolds* (1915) 169 Cal. 600, 601 [147 P. 268]; *Abstract & Title Guar. Co.* v. *State* (1916) 173 Cal. 691, 694 [161 P. 264].)

"The use of the word 'valuable' in the act of 1911, excludes considerations of love and affection." (*Estate of Brix* (1919) 181 Cal. 667, 674 [186 P. 135].) The *Brix* case also held that "adequate consideration" was the same as that required for specific performance of a contract. (Civ. Code, § 3391, subd. 1.) Since such adequacy was peculiarly a question of fact dependent on the circumstances of the particular case (*O'Hara* v. *Wattson* (1916) 172 Cal. 525 [157 P. 608]), the *Brix* holding gave considerable scope for inheritance tax avoidance. Although this court had originally indicated that under the 1911 act consideration, to be "adequate," had to be reasonably and objectively measurable in money,[3] the *Brix* case in effect left the measurement of adequacy to the parties so long as they "looked at the transaction from a pecuniary and not a sentimental standpoint." (181 Cal. at p. 678.)[4] To

---

[3]In *Estate of Reynolds* (1915) *supra*, 169 Cal. 600, the decedent had transferred a going business to his adult son for a consideration measurable in money, but in circumstances indicating that the transfer was in lieu of a testamentary disposition. The value of the consideration was much less than the value of the business. In upholding taxability, this court said (169 Cal. at p. 604) that such consideration "certainly was not adequate from any commercial point of view." The *Reynolds* case was followed in *Estate of Felton* (1917) 176 Cal. 663, 668 [169 P. 392] (*inter vivos* transfer by father to adult son of stock in closely held family corporation).

[4]*Estate of Brix* (181 Cal. at p. 674) declared that the statement as to consideration "from a commercial point of view" in the *Reynolds* case "was not intended as a complete definition of adequacy of the consideration, but merely to indicate that the particular transaction there considered, being a sale of a going business, must be regarded from the same point of view as any commercial transaction."

The transaction considered in *Brix* was not commercial. Decedent and his wife executed a property settlement agreement and three contemporaneous deeds of realty. The controller sought to uphold the imposition of the inheritance tax on only one part of the transaction, a deed from decedent and his wife to their three children, reserving a life estate to decedent.

*Brix* arose under the 1911 inheritance tax statute. The court refused to apply, as declarative of previously existing law, the 1917 amendment defining "valuable and adequate consideration" as "equal in money or in money's worth to the full value of the property transferred." It said (181 Cal. at p. 674 et seq.), "We think the rule applicable in specific performance cases, so far as the mercenary side of it is concerned, should control. Considering the transactions in that light, this transfer . . . was made for an adequate consideration 'in money's worth.' . . . [Decedent] obtained a release of his wife's claims, not only to the property [formerly community] he retained, but to all other property which he might thereafter acquire, and became free from her interference in any dealings he might wish thereafter to make in property. . . . Who can say how much it

emphasize that consideration for inheritance tax purposes should be objectively measured, the Legislature in 1917 defined "valuable and adequate consideration" as "a consideration equal in money or in money's worth to the full value of the property transferred." (Stats. 1917, ch. 589, § 2, subd. 3, p. 882.) This definition was carried into the subsequent inheritance tax statutes and was codified in 1943 (Rev. & Tax. Code, § 13641).

Although the Legislature has thus been concerned over the years with consideration in connection with *inter vivos* transfers, it has never spoken of consideration in connection with transfers by will. The reason is obvious. When the Legislature provided that every transfer by will is taxable, that is exactly what it meant. (*Estate of Grogan* (1923) 63 Cal.App. 536, 543 [219 P. 87].) Its distinction between testamentary and *inter vivos* transfers is not unreasonable or unfair. (See *Stebbins* v. *Riley* (1925) 268 U.S. 137, 141-143 [45 S.Ct. 424, 69 L.Ed. 884, 44 A.L.R. 1454].) The Legislature could reasonably find that ordinarily the making of a will is not the subject of bargains entered into for solely pecuniary consideration, and in the exercise of its power to classify for tax purposes it could quite properly decide, as it did, to tax "every" "transfer by will."

The Legislature's language is certainly apt for that purpose in the light of the rules of statutory construction set forth by this court with regard to the 1905, 1911, and 1913 inheritance tax acts: " 'It is thought to be only reasonable to intend that the legislature in making provisions for such proceedings [imposition and collection of taxes] would take unusual care to make use of terms which would plainly express its meaning, in order that ministerial officers might not be left in doubt in the exercise of unusual powers, and that the citizen might know exactly what were his duties and liabilities. A strict construction in such cases seems reasonable, because presumptively the legislature has given in plain terms all the power it intended to be exercised.' (1 Cooley on Taxation, 453.) This rule is, of course, to be applied only where some ambiguity exists or doubt arises from the language used as to the meaning intended. 'Beyond the words employed, if the meaning is plain

---

was worth to him in money, to have his marital troubles settled in this way? He had a just expectancy of many years of life. It is apparent that the parties looked at the transaction from a pecuniary and not a sentimental standpoint. They evidently regarded the consideration as adequate and they were in a much better position to place a value thereon than is this court."

and intelligible, neither officer or court is to go in search of the legislative intent.' *(Ibid., 450.)*'' *(Estate of Potter* (1922) *supra,* 188 Cal. 55, 64-65.)

It is, of course, still the rule that ''it is the function of the courts to construe and apply the [inheritance tax] law as it is enacted and not to add thereto nor detract therefrom.'' *(Kirkwood* v. *Bank of America* (1954) 43 Cal.2d 333, 341 [273 P.2d 532]; *In re Miller* (1947) 31 Cal.2d 191, 199 [187 P.2d 722].) We cannot properly add to the article of the inheritance tax statute concerning transfers by will the provision as to valuable and adequate consideration that the Legislature advisedly placed only in the article concerning *inter vivos* transfers.

Nor can we make such an addition to the statute on the ground invoked in *Estate of Belknap* (1944) 66 Cal.App.2d 644 [152 P.2d 657], that the will is ''merely the conduit'' by which the testator performs his *inter vivos* obligation when a transfer by will is made in accordance with an enforceable contract supported by adequate consideration.[5] The conclusion, that the transfer by the ''mere conduit'' of the will is not taxable, is based on the mistaken assumption that for

---

[5]The court in *Belknap* (66 Cal.App.2d at p. 654) misconstrued an opinion of this court *(Estate of Rath* (1937) 10 Cal.2d 399, 407 [75 P.2d 509, 115 A.L.R. 836]) and a superseded opinion of a District Court of Appeal *(Estate of Madison,* 26 Cal.2d 453 [148 P.2d 668]) to reach the conclusion that this court had ''modified'' *Estate of Grogan* (1923) *supra,* 63 Cal.App. 536, to free from the inheritance tax the very kind of transaction that *Grogan* held taxable. The *Belknap* court derived its characterization of the will as a ''mere conduit'' from *Estate of Rath, supra.* The *Rath* case involved facts distinctly different from those involved here and from those in *Grogan* and *Belknap. Rath* held that in fixing the inheritance tax the probate court could and should look behind what appeared to be an absolute devise of the fee in real property from decedent Rath to the nephews of his previously deceased wife and tax the transfer for what it actually was; i.e., a gift from the previously deceased wife to her nephews of an interest in property that decedent Rath held as trustee during his life. In other words, the court refused to apply the parol evidence rule to preclude taxation of the beneficial transfer that in fact took place. The effect of the decision in *Rath* was to reduce the amount of tax payable by the nephews, because they in fact took from their aunt rather than from decedent, a stranger in blood. Conversely, however, an *inter vivos* transfer that appears absolute on its face can be shown by parol evidence to have been made on terms that subject it to the inheritance tax. (See *Kelly* v. *Woolsey* (1918) 177 Cal. 325, 329, 334 [170 P. 837]; *Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630].)

The *Rath* case states (10 Cal.2d at p. 407), ''Decisions such as *In re [Estate of] Grogan,* 63 Cal.App. 536 [291 P. 87], *In re Gould's Estate,* 156 N.Y. 423 [51 N.E. 287], and *In re Kidd's Estate,* 188 N.Y. 274 [80 N.E. 924], do not consider the problem determined herein. Said decisions are to the effect that a transfer made by will is taxable although in pursuance of a contract, in payment of a debt, or for services rendered. *Said decisions had reference to a situation where the testator is disposing of*

inheritance tax purposes a contractual obligation to make a will is no different from an ordinary contract obligation undertaken by decedent during his lifetime and enforceable against his estate because by chance he died before performing it. When decedent promised to create a testamentary trust, he "did not contract to convey; he contracted to make a will"[6] (*In re Howell's Estate* (1931) 255 N.Y. 211 [174 N.E. 457, 459]; *Carter* v. *Craig* (1914) 77 N.H. 200 [90 A. 598, Ann.Cas. 1914D 1179, 52 L.R.A. N.S. 211]), and the contractual right acquired by the obligee was to a transfer subject to the laws governing testamentary transfers (*Clarke* v. *Treasurer* (1917) 226 Mass. 301 [115 N.E. 416, 417]). Therefore, as held in the cases last cited, a transfer by will pursuant to contract is subject to the inheritance tax.[7]

---

*his own property, not of property held by him in trust for others,* as to which his will is a mere conduit of title." (Italics added.)

The court in *Belknap* (66 Cal.App.2d at p. 654) seized on the last quoted phrase (applied by the *Rath* court, of course, to the will of Mr. Rath, not the wills of Grogan and Gould) and incorrectly said that the opinion of the District Court of Appeal in *Estate of Madison*, 26 Cal.2d 453 [148 P.2d 668] (superseded by the opinion of this court in 26 Cal.2d 453) "cites with approval the *Estate of Rath* as authority for the construction of the statute holding that the Inheritance Tax Act imposes a tax on the theory of 'succession,' and not merely because the will is 'used as a means of conveyance'"; thus *Belknap* came to the erroneous conclusion "that the *Grogan* case has been modified to that extent."

[6]The essential difference in the rights of the beneficiary under a contract to create an *inter vivos* trust and a contract to create a testamentary trust is obvious. When John's promise in the present case was made to maintain in effect a will providing for distribution into a trust for Madeline's benefit of an amount of money or property that would adequately pay for her support during the remainder of her life, it gave the donee beneficiary no more than the possibility that at some future time she might have some kind of cause of action against someone (see *Brown* v. *Superior Court* (1949) 34 Cal.2d 559, 563 [212 P.2d 878]; *Brewer* v. *Simpson* (1960) 53 Cal.2d 567, 593 [349 P.2d 289]; *Ludwicki* v. *Guerin* (1961) 57 Cal.2d 127, 130 et seq. [17 Cal.Rptr. 873, 367 P.2d 415]; *Day* v. *Greene* (1963) 59 Cal.2d 404, 411 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R. 802]) if she did not predecease John (see *O'Brien* v. *O'Brien* (1925) 197 Cal. 577, 589 [241 P. 861]).

[7]The New York court in *Howell's Estate, supra,* stated that any confusion in previous New York decisions was cleared by N. Y. Laws of 1925, chapter 143. That statute (similar to our inheritance tax statute) provided that if an *inter vivos* transfer, otherwise liable to tax, "is made for a valuable consideration, the portion of the transfer for which the grantor or vendor receives equivalent monetary value is not taxable," but clearly did not so provide as to transfers by will or intestacy. *Howell* holds that under the 1925 New York statute both transfers by will and receipt of property by specific enforcement of a contract to transfer by will are "subject to the rule formulated in cases like Gould's and Kidd's." (*In re Gould's Estate* (1898) 156 N.Y. 423 [51 N.E. 287, 288], imposing a tax on a testamentary transfer in agreed payment for services rendered by the testator's son; *In re Kidd's Estate* (1907) 188

One who bargains and pays for a promise to make a will presumably knows that the promised transfer will be subject to the tax, particularly since our inheritance tax statutes have always unequivocally made a transfer by will taxable.[8] Taxability of the transfer the legatee and testator have bargained for is a part of the bargain. If the legatee wishes a distributive share undiminished by inheritance tax, he can bargain for a will so providing. (See *Estate of Irwin* (1925) 196 Cal. 366, 375 [237 P. 1074].) The same, of course, is true when the contract to make a will is for the benefit of one who is not a party to the contract, as in the case of Madeline here.

Adherence to the statute does not put a premium on the violation of such agreements. A decedent's failure to perform his contract to make a specified testamentary disposition does not relieve from the operation of the inheritance tax statute a transfer by intestate succession or by a will that does not conform to his contract. Whether or not the decedent performs his contract, transfers of his property are subject to the inheritance tax. Illustrative of this situation is *In re Kidd's Estate* (1907) *supra,* 188 N.Y. 274 [80 N.E. 924]. There decedent, by antenuptial contract with his wife, promised to bequeath all his property to the wife's daughter (his stepdaughter). He died leaving a will that bequeathed his property to others. The stepdaughter obtained a decree directing the executors and beneficiaries named in the will to execute releases and conveyances of the property to her. The court of appeals rejected the stepdaughter's contention that there was no taxable transfer. It pointed out that had decedent performed his contract, the transfer by will would have been taxed, and that in enforcing the contract equity "converts the devisees under the will, or the heirs at law or next of kin, as the case may require, into trustees for the beneficiary under the original agreement." Therefore, the court concluded, "the devolution of the property has in fact taken place under the

N.Y. 274 [80 N.E. 924], imposing the inheritance tax on the transfer of decedent's property to plaintiff stepdaughter, decreed in her suit for specific performance of decedent's antenuptial agreement with plaintiff's mother.)

[8]Although there has been a conflict since 1944 between *Belknap* and the earlier *Grogan* decision, the State Controller's regulations continue to follow the inheritance tax law as written: "A transfer by will is subject to the Inheritance Tax Law even though made pursuant to an agreement between the transferee and the decedent for an adequate and full consideration in money or money's worth which was received by the decedent. In such case, the transferee takes from the decedent under the will and not by virtue of the agreement." (Cal.Admin.Code (1959), tit. 18, §§ 13601-13603(a).)

will, and such devolution is subject to the transfer tax." (See also *People* v. *Field's Estate* (1910) 248 Ill. 147 [93 N.E. 721, 723, 33 L.R.A. N.S. 230] : "Illustration is not necessary to show that any other rule would enable parties desiring to do so to in a measure defeat the object and purpose of the statute.")

When the beneficiary of the contract to make a will that decedent has breached obtains specific performance, those to whom the property passes by the law of testate or intestate succession hold as trustees for the beneficiary. (*Ludwicki* v. *Guerin* (1961) *supra,* 57 Cal.2d 127, 130.) The beneficial transfer that in fact takes place is taxed (see *Estate of Rath* (1937) *supra,* 10 Cal.2d 399), and the beneficiary of the contract pays the tax rather than those to whom the property devolved by operation of the will or intestacy.

It is contended that it would be anomalous to impose a tax whenever a testator provides in his will that a creditor shall receive a stated sum in payment of a debt owed by the testator, although there would be no tax when the testator failed·to specify that the debt be paid, thus requiring the creditor to file a claim against the estate. There is no such anomaly. No statute provides that a testator can force his creditor to take a stated sum as a taxable legacy and thus deprive the creditor of his right to be paid as a creditor. When a testator gives a legacy to a creditor in payment of a debt, the choice to collect as creditor or to take as legatee remains with the creditor. He can renounce the legacy and collect his claim as a debt. (See *Sheppard* v. *Desmond* (Tex.Civ.App. 1943) 169 S.W.2d 788, 790.) When the creditor renounces, he is not chargeable with any tax on the amount he receives in payment of his claim.

Assume a will that provides, "I bequeath to C the sum of $10,000 in payment of my debt to him." Assume further that the amount of the debt is $10,000, that C renounces the legacy and files a creditor's claim, and that the claim is allowed.[9] The tax would be computed as follows :

[9]The following provisions of the inheritance tax statute (Rev. & Tax. Code, div. 2, pt. 8) would govern computation of the tax:

"If a transferee under a will renounces his rights under the will . . . the tax is nevertheless computed in accordance with the terms of the will admitted to probate." (§ 13409.)

"The tax is computed upon the clear market value of the property transferred. . . ." (§ 13402.) " 'Clear market value' means the market value of any property included in any transfer, less any deductions allowable by this part." (§ 13312.)

The article of the statute relating to deductions "is a limitation on

| | |
|---|---|
| Value of the property subject to the inheritance tax statute transferred to the particular transferee . . . . . | $10,000 |
| Allowable deduction provided in section 13981 et seq. . . . . . . | 10,000 |
| Clear market value . . . . . . | – 0 – |
| Tax . . . . . . . . . . | None |

If the value of a legacy left in express payment of the testator's debt to the legatee is greater than the amount of the debt, the legatee may prefer to take the legacy. In such case, however, he cannot also have the amount of the debt deducted from the value of the legacy in computation of the tax. (Rev. & Tax. Code, § 13981.) The testator gives the legatee-creditor his choice and the legatee-creditor takes his choice with presumed knowledge of the inheritance tax. There is nothing unfair in the imposition of the same inheritance tax on a legacy accepted in payment of an ordinary debt as that imposed on another legacy of equal value to one who is not a creditor. Different taxes may be imposed on transfers of the same value if the circumstances differ. (*Stebbins* v. *Riley* (1925) *supra*, 268 U.S. 137, affirming *Estate of Watkinson* (1923) 191 Cal. 591, 599 [217 P. 1073]; *Estate of Elston* (1939) 32 Cal.App.2d 652, 660 [90 P.2d 608].)

It has been suggested that it would be unfair to tax a transfer by will pursuant to an *inter vivos* contract in situations similar to that in the *Belknap* case, *supra*, 66 Cal.App. 2d 644. For a concededly valuable and adequate consideration within the meaning of the inheritance tax statute Belknap contracted in a property settlement agreement to provide by will that his executor purchase a $20,000 annuity for his wife.

---

deductions allowable. It is not intended by this article to allow as a deduction anything that does not actually reduce the amount of an inheritance or transfer.'' (§ 13981.)

''In determining the market value of property included in any transfer subject to this part, the deductions specified in this article, and no others, are allowed against the appraised value of the property, if the deductions: (a) Are obligations of the decedent or his estate, except as otherwise indicated in this article; and (b) Are paid by the estate or the transferee.'' (§ 13982.) ''Debts of a decedent owed by him at the date of his death are deductible from the appraised value of property included in any transfer subject to this part made by the decedent.'' (§ 13983.)

The word ''paid'' as used in section 13982 does not mean that the money must have been ''physically paid'' but may refer to ''the amount finally fixed and which is enforceable.'' (*Estate of Slack* (1948) 86 Cal. App.2d 49, 53 [194 P.2d 61]; see *Estate of Skinker* (1956) 47 Cal.2d 290, 294 [303 P.2d 745, 62 A.L.R.2d 1137].)

His will referred to the property settlement agreement and directed the executor to purchase the annuity. If the parties intended that the wife, having paid full value for a $20,000 annuity, should receive an annuity undiminished by the inheritance tax, the solution to the problem lay not in a judicial rewriting of the inheritance tax statute, but in construing the will in light of the contract as bequeathing $20,000 *net* for purchase of the annuity. A legacy of a specified amount free of inheritance tax is construed as a legacy of a sum sufficient to net the amount specified after payment of the inheritance tax thereon, namely, of the amount specified and "an additional amount sufficient to pay the tax and the tax upon the tax *ad infinitum*." (*Estate of Irwin* (1925) *supra,* 196 Cal. 366, 375.) Such a construction of the Belknap legacy would effect the intent expressed by the will (which was also the intent of the parties to the *inter vivos* arrangement) without the distortion of the statute resorted to in the *Belknap* opinion.

Adoption of the theory of the *Belknap* case not only distorts a clearly expressed and proper legislative purpose but leads to confusion and uncertainty in the administration of the statute. I would therefore disapprove *Estate of Belknap, supra,* 66 Cal.App.2d 644, and adhere to *Estate of Grogan, supra,* 63 Cal.App. 536, which faithfully followed the statute.

Respondent's petition for a rehearing was denied September 28, 1966. Traynor, C. J., was of the opinion that the petition should be granted.